[Civ. No. 34770. Second Dist., Div. Two. May 26, 1970.]

ZELDA X. VITTAL, Plaintiff and Appellant, v.
LONG BEACH UNIFIED SCHOOL DISTRICT,
Defendant and Appellant.

114

## COUNSEL

Baird, Mooney & Baird and Woodrow W. Baird for Plaintiff and Appellant.

John D. Maharg, County Counsel, and Louis S. Gordon, Deputy County Counsel, for Defendant and Appellant.

## OPINION

**HERNDON, J.**—Petitioner is a teacher of English as a Second Language for respondent herein, the Long Beach Unified School District. She has been employed by respondent on an hourly basis since the 1956-1957 school year. On December 1, 1967, she petitioned the superior court for a writ of mandate seeking a judgment requiring that she be classified as a permanent employee of the district retroactively as of the 1959-1960 school year, and awarding her arrearages in salary allegedly due her from 1959 to the present in the approximate amount of $19,000.

The judgment of the trial court requires the respondent school district to classify petitioner as a "permanent employee" as of September 1959, but denies her any award for the claimed deficiencies in salary for past years. The judgment further requires respondent to compensate petitioner for the school year 1967-1968 according to the hourly rate as provided in her contract for 21 hours per week with every third month reduced to 16 hours per week and that she be compensated for the 1968-1969 school year in the same classification and at the hourly rate applicable during the school year 1968-1969.

Both sides appeal from the judgment, the petitioner contending that she is entitled to permanent employment on a full time basis with back pay from the school year 1959-1960, while the respondent contends that peti-

tioner is entitled neither to back pay nor to permanent full time tenure classification or at most part time permanent tenure status.

*Statement of Facts*

Commencing with the school year 1956-1957, petitioner was employed by the school district to teach English for the foreign born on hourly rate contracts at Long Beach City College, a junior college. She has been employed under similar contracts every year since then, although the name of the course has been changed to English as a Second Language. Her teaching load varied from year to year, both as to the total number of hours and the number of days taught per week. The trial court found as a matter of fact that petitioner taught the number of hours and days each school year as follows:

| School Years | Days Per Week | Hours Per Week | |
|---|---|---|---|
| 1956-1957 | 5 | 17.5 | |
| 1957-1958 | 5 | 17.5 | (1st Sem.) |
| | | 21 | (2d Sem.) |
| 1958-1959 | 3 | 21 | |
| 1959-1960 | 3 | 21 | |
| 1960-1961 | 4 | 21 | (1st Sem.) |
| | | 24 | (2d Sem.) |
| 1961-1962 | 4 | 24 | |
| 1962-1963 | 3 | 24 | |
| 1963-1964 | 3 | 24 | |
| 1964-1965 | 4 | 24 | |
| 1965-1966 | 4 | 24 | |
| 1966-1967 | 3 | 21 | |
| 1967-1968 | | 12 | |

In addition to her actual classroom teaching, petitioner testified that she spent considerable time preparing lessons, correcting papers, counseling students, attending staff meetings, serving on committees and performing various other work normally expected of teachers. The tentative assignment forms provided that any hourly teacher assigned six hours or more of classroom teaching might be required to perform such additional duties and it is clear from the testimony of both petitioner and the school officials that she was expected to share in their performance. The trial court found that for all years except 1967-1968 petitioner "carried and performed a 'teacher load' equivalent to or greater than other permanent employee teachers instructing in the same course . . ." Respondent does not dispute this finding nor does it contend that petitioner taught less than 75 percent of the total hours of a permanent teacher in any year except 1967-1968.

A teacher of English as a Second Language must have proper certification qualifications and petitioner at all times had these qualifications by virtue of her possessing a general secondary teaching credential.

Petitioner requested "contract" or "permanent" status as early as 1959. She testified that in 1959, Assistant Dean Pavich told her that her request for permanent status had been denied and that she could "take it higher" but "that I would probably be committing professional suicide." Nevertheless, she pursued the matter again in the years 1960, 1961 and 1962 with Assistant Dean Ringwald. She testified that Mr. Ringwald suggested that she discuss it with the head dean, Mr. Cook, which she did, but to no avail. In the years 1963 through 1967, petitioner went to the president of the college, Dr. Garner, but was unable to convince him that she was entitled to permanent status. Finally, petitioner referred her problem to the teachers' association and one of its officials contacted the school district about petitioner's request for permanent status.

In the spring of 1967, petitioner received a written notice informing her that she was scheduled to teach 21 hours per week in the fall with a reduction to 16 hours every third month. Subsequent to this time, in July of 1967, petitioner asked the teachers' association to assist her. On the opening day of classes in September 1967, she was notified by a telephone call from the Assistant Dean of Instruction that her teaching load had been reduced to 12 hours per week, with only 8 hours per week every third month.

Petitioner contends that the action of the school district was arbitrary and intended to punish her for asserting her claim to permanent status. The school district denies such motivation. Dr. Garner testified that the hours in her tentative assignment were reduced because he wanted to spread the work among the other hourly teachers, some of whom had training in linguistics which petitioner did not have.

The finding of the trial court on this point was that "the reduction in plaintiff's teaching hours . . . was without justification, capricious, and knowingly calculated to prejudice plaintiff's position as a permanent employee."

*Plaintiff Is Entitled to Classification as a Permanent Employee.*

The main issue in this case is whether or not petitioner is entitled to status as a permanent teacher. ■ The provisions for permanent status are contained in the Education Code and if they have been met the attainment of permanent status is automatic. No application need be made, nor is any affirmative action on the part of the school board necessary (43

Cal.Jur.2d Rev., Schools, § 461, p. 847). Thus, whether petitioner sufficiently exhausted her administrative remedies is not in issue. If she has met the requirements, she is entitled to permanent status.

The governing statute is Education Code section 13304 which reads: "Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for three complete consecutive school years in a position or positions requiring certification qualifications, is re-elected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be classified as and become a permanent employee of the district."

██ It is conceded by respondent that all statutory provisions have been fulfilled except the requirement of "three *complete* consecutive school years." The meaning of the phrase "complete school year" is spelled out in Education Code section 13328. The first sentence of that section reads: "A probationary employee who, in any one school year, has served for at least 75 percent of the number of days the regular schools of the district in which he is employed are maintained shall be deemed to have served a complete school year."

Respondent argues that the requirements of these two sections have not been met since petitioner cannot point to any three consecutive years in which she has taught 75 percent of the school days. For instance, in 1960-1961 and 1961-1962 she had classes scheduled on four out of the five school days and thus taught 80 percent of the days in that year. But in each of the years immediately prior and subsequent to those two years, she only taught three out of the five days or 60 percent of the total number of days.

Petitioner advances a more liberal construction of the law arguing that the statute does not require that a teacher "hold classes" or "teach" 75 percent of the time but only that she "serve" 75 percent of the time. And she contends that she has "served" more than 75 percent of the time for many years since during all years except 1967-1968 she has carried a full teaching load and has worked as many hours as permanent teachers assigned to the same course.

We regard this as a case of first impression. We hold that under the facts of this case petitioner has served in excess of 75 percent of the school days for three consecutive years and thus is entitled to permanent classification under sections 13304 and 13328 of the Education Code.

The trial court found that petitioner carried a "teacher load" equivalent to or greater than other permanent employee teachers instructing in the

same course. It is not within our province to reweigh the evidence. Certainly there was sufficient evidence produced at the trial to support this finding.

■ Thus, the determinative question is resolved to this: Where a teacher has taught more than 75 percent of the *hours* of a full time teacher, but has not taugh 75 percent of the *days* of the school year, should section 13328 of the Education Code be narrowly construed to deny her permanent status? We answer this question in the negative. The Legislature cannot reasonably be expected to anticipate every conceivable problem of construction that may arise when it enacts a statute. In enacting section 13328 the Legislature undoubtedly contemplated the usual and general prevailing situation in elementary and secondary schools in which teachers are assigned to classes taught five days a week. Thus, the requirements of the section were expressed in terms of days. But there is nothing in the statute which indicates an intent that permanent status should be denied where an equivalent percentage of hours has been served, although the teacher has conducted classes on only three days out of five of each week.

■ Our task is to ascertain the probable intent of the Legislature. In performing this duty we are not necessarily required to adopt a strictly literal interpretation of the language of a statute regardless of the reasonableness of the result. "Where the construction of a statute is necessary, it should be interpreted so as to produce a result that is reasonable [citation]; the courts must look to its context and, where uncertainty exists, consideration should be given to the consequences that will flow from a particular interpretation [citations]; its apparent purpose will not be sacrificed to a literal construction [citations]; instead, that interpretation which will effect such purpose should be adopted. [Citations.]" (*Ivens* v. *Simon,* 212 Cal. App.2d 177, 181-182 [27 Cal.Rptr. 801].)

■ It was the apparent intent of the Legislature in enacting the "tenure" statutes that teachers who have faithfully served the indicated portion of the school year for three consecutive years should be entitled to permanent classification upon their contracting to teach a fourth year. The petitioner falls within the class of teachers intended to be benefited by the statute.

As additional support for her position petitioner relies on Education Code section 13328.5 added by the Legislature in 1967 as an enactment indicative of legislative intent. This section reads: "Notwithstanding Section 13328, a probationary employee employed by a junior college district or a junior college maintained by a unified or high school district who, in any school year consisting of two semesters or three quarters, has served more than 75 percent of the number of *hours* considered as a full-time assignment for permanent employees having similar duties in the junior

colleges of the district in which he is employed, shall be deemed to have served a complete school year." (Italics added.)

■ It is respondent's contention that in enacting section 13328.5 the Legislature manifested its intention to change the law applicable to the situation presented by the case at bench and cites a number of cases for the proposition that a new enactment affecting substantive rights should be given only prospective application absent a clear direction that it be applied retroactively. We have no quarrel with this general proposition of law but its application to this case would assume that the new statute was intended to effect a *change* in the law rather than a *clarification* of the previously existing law. We think that assumption unwarranted. For the reasons previously discussed we have concluded that the 1967 amendment was ". . . merely the result of a legislative attempt to clarify the true meaning of the statute. [Citations.]" (*Martin* v. *California Mut. Bldg. & Loan Assn.,* 18 Cal.2d 478, 484 [116 P.2d 71].)

*The Judgment Should Have Declared Petitioner's Status
Retroactively to the First Day of the School Year
Commencing in September 1965.*

■ Section 338, subdivision 1, of the Code of Civil Procedure provides that an action upon a liability created by statute, other than a penalty or forfeiture, must be commenced within three years. This section has been held applicable to a mandamus proceeding by a teacher seeking classification as a permanent employee. (*Ingram* v. *Board of Education,* 36 Cal.App.2d 737, 739 [98 P.2d 527]; *Baldwin* v. *Fresno City etc. School Dist.,* 125 Cal.App.2d 44, 51 [269 P.2d 942].)

■ While petitioner's right to be classified as a permanent teacher matured in September 1959, this action was not instituted until December 1967. The school district did not in any way "waive" or estop itself from asserting the bar of the statute of limitations. Each year the administration officials clearly and without qualification informed petitioner that her application for permanent status was being denied.

However, in each year after 1959, petitioner's right to be classified as a permanent teacher automatically became renewed, as each year the petitioner was in a position of having taught the complete school year for the preceding three years.

Since petitioner filed her complaint in December of 1967, we hold that she is barred by the statute of limitations from receiving permanent status for all years through the year beginning September 1964. A cause of action accrued the first day of school in September 1964, when she began

teaching on an hourly basis under a contract that classified her as a part time teacher. Having failed to timely enforce this cause of action, a new cause of action did not arise until the first day of school in September of 1965.

### Petitioner Is Not Entitled to Back Pay for the Years Prior to 1967-1968.

Petitioner seeks a recovery of additional pay for the years 1959-1960 through the present on the grounds that the school district is required by law to pay all its permanent teachers according to a uniform salary schedule. (Ed. Code, §§ 13502, 13502.5, 13503, 13506.) These code sections undoubtedly do impose on the school district the obligation to compensate all its permanent employees in a like manner with permissible variations for relevant factors such as years of experience or educational background. However, the Supreme Court has ruled in *Heckley* v. *Board of Education,* 53 Cal.2d 218 [347 P.2d 4], that a teacher may waive the minimum salary provisions of the Education Code by contracting with the school district for a lesser salary.

In *Heckley* v. *Board of Education, supra,* 53 Cal.2d 218, a kindergarten teacher had refused to accept a position requiring her to teach both in the morning and afternoon and contracted to teach the morning session only at half pay. She taught mornings for a full year and then sued for full pay rather than half pay. The Supreme Cout held that petitioner, by accepting her part time contract, waived the provisions of the Education Code fixing the minimum salary and was bound by the terms of her contract with the school district. (Cf. *Beseman* v. *Remy,* 160 Cal.App.2d 437, 445 [325 P.2d 578]; *Taylor* v. *Board of Education,* 31 Cal.App.2d 734 [89 P.2d 148].)

We see no material difference in the case before us. While petitioner complained every year that she should be entitled to permanent status, she always eventually contracted to teach at hourly rates. Had she sought a writ of mandamus in those years requiring the school district to hire her as a permanent teacher and pay her on the uniform salary scale, such a writ would have properly been issued. But she chose to accede to the school district's view. By contracting for employment on an hourly basis, she waived whatever benefits the statute might have granted to her.

Petitioner cites *Fry* v. *Board of Education,* 17 Cal.2d 753 [112 P.2d 229], and *Kacsur* v. *Board of Trustees,* 18 Cal.2d 586 [116 P.2d 593], in support of her position. However, in *Fry,* the dispute centered over the correctness of an interpretation of the rules and regulations of the district. Those rules and regulations formed a part of the teaching contract. Thus

the court awarded the back pay, not because it found that the contract was in violation of state law, but because it placed an interpretation on the contract different from that of the school board. In *Kacsur*, the court did not discuss a "waiver" theory. If it can be said that the court impliedly rejected a "waiver" theory in that case, we hold that the Supreme Court has impliedly overruled the *Kacsur* decision on that point.

### The Trial Court Did Not Err in Determining the Compensation to Which Petitioner Was Entitled for the School Year Commencing in September of 1967.

 We have recited the facts relating to the actions of the respondent in ordering a drastic reduction in petitioner's teaching schedule for the school year commencing in September of 1967. Although there was conflicting testimony, we find sufficient evidentiary support for the trial court's finding that this reduction in petitioner's teaching hours "was without justification, capricious, and knowingly calculated to prejudice petitioner's position as a permanent employee."

We reject respondent's contention that the portion of the judgment fixing the compensation to which petitioner was entitled for the school year beginning in September 1967 involved an unwarranted reformation or repudiation of the contract between the parties. Petitioner never agreed to the reduction in her teaching assignment but consistently protested against it and filed her petition for a judicial determination of her rights in December of 1967. Her conduct in performing her teaching duties in conformity with the reduced schedule was reasonably construed by the trial court as a fulfillment of her duty to mitigate damages rather than an indication of her intention to waive her rights in the premises.

### Petitioner Should Have Been Classified as a Permanent Full Time Teacher.

 The trial court found that petitioner was entitled to status as a permanent teacher, but declined to specify whether a permanent full time teacher or permanent part time teacher, apparently on the ground that the determination of this question was unnecessary since no back pay was awarded. But since the law recognizes a distinction between part time permanency and full time permanency (43 Cal.Jur.2d Rev., Schools, § 470, p. 854), and since substantial rights depend upon her status in this respect, we hold that it should have been determined. The court did find as a matter of fact that the petitioner had taught at least a full load for all years except 1967-1968. In view of this finding petitioner is entitled to have the judgment modified to declare that she is entitled to classification as a permanent full time teacher.

Since we have determined that petitioner is not entitled to back pay for any year prior to 1967-1968, we find it unnecessary to rule on respondent's various contentions that back pay cannot be awarded because of the statute of limitations, laches, or failure to plead and prove the existence of a fund from which she could be paid.

The judgment is modified to require the respondent to classify petitioner as a "Full Time Permanent Employee (English as a Second Language)" as of the first day of the school year commencing in the month of September 1967, and retroactive to the first day of the school year commencing in September of 1965.

As modified, the judgment is affirmed. Petitioner will recover her costs on appeal.

Roth, P. J., and Fleming, J., concurred.