[S.F. No. 23648. May 25, 1979.]

PERALTA FEDERATION OF TEACHERS, LOCAL 1603,
AMERICAN FEDERATION OF TEACHERS, AFL-CIO et al.,
Plaintiffs and Appellants, v.
PERALTA COMMUNITY COLLEGE DISTRICT et al.,
Defendants and Appellants.

**COUNSEL**

Treuhaft, Walker, Brown & Cooper, Treuhaft & Walker, Doris Brin Walker Rosen, Remcho & Henderson, Sanford Jay Rosen and Robin B. Johansen for Plaintiffs and Appellants.

Stewart Weinberg, Van Bourg, Allen, Weinberg & Roger, LaCroix & Schumb and Joseph G. Schumb, Jr., as Amici Curiae on behalf of Plaintiffs and Appellants.

Richard J. Moore, County Counsel, Jon A. Hudak, Deputy County Counsel, Littler, Mendelson, Fastiff & Tichy, Harlan E. Van Wye and Patrick S. McGovern for Defendants and Appellants.

John H. Larson, County Counsel (Los Angeles), Urrea C. Jones, Jr., and Stephen K. Matson, Deputy County Counsel, Biddle, Walters & Bukey, John L. Bukey, Larry J. Frierson, Alexander Bowie, Spencer E. Covert, Jr., R. Clifford Lober, Deputy County Counsel (Napa), Paul R. Delay, Deputy County Counsel (Monterey), Donald L. Clark, County Counsel (San Diego), Timothy K. Garfield, Deputy County Counsel, Thomas M. O'Connor, City Attorney (San Francisco), Timothy Murphy, Deputy City Attorney, Paul J. Mason, Deputy County Counsel (San Mateo), and LeRoy W. Blankenship, Deputy County Counsel (Los Angeles), as Amici Curiae on behalf of Defendants and Appellants.

## Opinion

**NEWMAN, J.**—The principal question in this case is whether former section 13337.5 of the Education Code withholds tenure rights from community college teachers hired over a period of years to serve less than 60 percent of full time.[1]

### I. *Did teachers hired before November 8, 1967, acquire permanent status?*

Section 13337.5 became law on November 8, 1967. It does not affect teachers hired before then. (*Balen v. Peralta Junior College Dist.* (1974) 11 Cal.3d 821 [114 Cal.Rptr. 589, 523 P.2d 629].) With respect to the facts here and rights of pre-1967 teachers the Court of Appeal opinion in this case, written by Justice Devine and concurred in by Justices Draper and Scott, reads as follows (and we adopt these paragraphs as part of our opinion):

"Twelve teachers who have been employed by Peralta Community College District (supported by plaintiff federation of which they are members) sought writ of mandate to compel the district and its governing board to grant them tenured status and to compensate them at a certain rate of pay. The trial court granted the writ to classify some of the teachers as permanent and others as contract employees, but denied the

---

[1]Unless otherwise indicated, all section references are to the Education Code of 1959 as it read just before its recodification effective April 30, 1977.

Section 13337.5 provides: "Notwithstanding the provisions of Section 13337, the governing board of a school district maintaining a community college may employ as a teacher in grade 13 or grade 14, for a complete school year but not less than a complete semester or quarter during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees for grades 13 and 14 during a particular semester or quarter because of the higher enrollment of students in those grades during that semester or quarter as compared to the other semester or quarter in the academic year, or because a certificated employee has been granted leave for a semester, quarter, or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board.

"Such employment may be pursuant to contract fixing a salary for the entire semester or quarter.

"No person shall be so employed by any one district for more than two semesters or quarters within any period of three consecutive years.

"Notwithstanding any other provision to the contrary, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446."

petition as it relates to pay. The district appeals from that portion of the judgment which has to do with classification and the teachers cross-appeal from the part which concerns compensation.

"1.   *Preliminary Explanation*

"The district employs between 1200 and 1300 instructors at its five campuses. There are three classes of instructors: regular ('permanent' or 'tenured'), contract ('probationary') and temporary. [Fn. omitted.] Some regular and contract teachers are employed part time, and these are paid a salary prorated to the salary of a full-time teacher. Temporary teachers are paid a flat hourly rate which is less than the rate which the salaried employee receives; they do not receive certain fringe benefits which are accorded those of the two higher classes; they may be dismissed without notice or hearing.

"Plaintiffs all work less than 60 percent of full time. They receive a written letter of notification from the district regarding their employment for the coming academic year. The letter states the instructor's potential assignment and specifies that his position is a temporary one. They are hired from quarter to quarter or from semester to semester, as the case may be. They are uniformly dismissed at the end of each year.

"Because different questions of law are applicable to teachers hired at different times, it is necessary to divide the twelve individual plaintiffs into two categories and to consider each category separately. (This is not a class action.)

"2.   *Teachers Employed Before November 8, 1967*

"Three of the plaintiffs have been employed year after year, but as temporary employees, annually discharged and rehired, commencing at dates earlier than the statutory changes . . . of November 8, 1967. The trial judge ordered that the three plaintiffs be classified as part-time regular employees.

"In order to become a regular (permanent) employee, one must first become a contract (probationary) employee. Prior to September 1, 1972, three years' service as a contract (probationary) employee was needed as a basis for permanent (tenured) status.

■ "Two questions, then, are before us at this point: (1) Did these three plaintiffs become contract (probationary) employees? and (2) did they attain tenure as regular employees? The district argues that the teachers may rightly claim neither status . . . . [¶] [W]e deem the first question to have been answered by the decision in *Balen* v. *Peralta Junior College Dist.*, 11 Cal.3d 821 [114 Cal.Rptr. 589, 523 P.2d 629]. Balen had been employed for four successive years since 1965 by the district as a temporary instructor. Then he was informed that his contract would not be renewed. It was held that under Education Code section 13334, which provides that 'Governing boards of school districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees,' Balen met the statutory prerequisites for probationary employment, although he was a part-time instructor. (At p. 829.) Plaintiffs meet the same prerequisites. Section 13337.5 of the Education Code, enacted in 1967 . . . was held to be nonretroactive; it could not divest plaintiff of his previously acquired status. [Fn. omitted.] The three pre-1967 employees became contract (probationary) employees prior to the enactment of section 13337.5.

"The second question is whether they acquired regular (permanent) status. Pursuant to section 13304 each such employee would be entitled to regular status if he had served three complete consecutive school years. A 'complete school year' was defined for community college employees as '75 percent of the number of hours considered as a full time assignment for permanent employees.' (§ 13328.5.) It was found by the trial court that none of the above named employees met the 75 percent requirement. In 1972, major revisions in the Education Code were made with respect to community college instructors (the 'Rodda Act'). The teachers contend that by virtue of the new provisions, the 75 percent rule set forth in section 13328.5 has no further application.

"Section 13346.25, effective in 1972, provides that if a contract (probationary) employee is employed under his second consecutive contract, the governing board has two options: to employ him as a regular employee for all subsequent academic years or not to employ him as a regular employee. But in the case of a contract (probationary) employee, the district's right to do this is limited by the requirement of section 13443 that notice of nonemployment be given with the reasons stated. It would not be sufficient reason, under *Balen*, to declare that the employment had been temporary only, no matter what the teacher's contract might say

(*Campbell* v. *Graham-Armstrong,* 9 Cal.3d 482, 486-487 [107 Cal.Rptr. 777, 509 P.2d 689]), because these teachers had attained contract status before 13337.5 was enacted. In the case of contract (probationary) teachers, the decision not to reemploy must be based on 'thoughtful, deliberate, and individual consideration.' (*Balen* v. *Peralta Junior College Dist., supra,* [11 Cal.3d] at p. 830, fn. 10.) These teachers were simply regarded as 'temporaries' and were not afforded the prescribed decision.

"But was it still required that a part-time pre-1967 contract employee serve 75 percent of the hours under section 13328.5 in order to qualify for reemployment under the new (1972) section 13346.25 as a regular part-time employee in the absence of a decision of the board, supported by a valid reason, not to reemploy? It is concluded that the 75 percent requirement of 13328.5 does not apply to these pre-1967 employees; that the provisions of the later section 13346.25 take precedence. We agree with an opinion of the Attorney General to the effect that, although section 13328.5 remains on the books, it has been rendered meaningless, at least insofar as the acquisition of tenure is concerned. (58 Ops.Cal. Atty.Gen. 703 (1975).) The pre-1967 teachers must be classified as part-time regular employees as of July 1, 1974 (this date is in accordance with section 25490.20, subd. (b))."

II. *Did the temporary status of teachers hired after November 8, 1967, require compliance with the first three paragraphs of section 13337.5?*

■ Plaintiffs who were employed after November 8, 1967, when section 13337.5 took effect, contend their status is unaffected by that section's fourth paragraph because their employment did not meet the conditions of the first three paragraphs. The first paragraph provides that a district "may classify" community college ("grade 13 and 14") teachers as temporary if they were employed to fill needs arising from increased enrollment or from absences of teachers on leave or ill. The third paragraph states, "No person shall be so employed . . . for more than two semesters or quarters within any period of three consecutive years." (See text in fn. 1, *ante.*) Plaintiffs' employment admittedly complied with none of those conditions. Justification for their temporary status thus depends on whether the section's fourth paragraph applies despite noncompliance with paragraphs one and three.

The district contends that the fourth paragraph's independent applicability is clear from section 13337.5's language. Words in the fourth

paragraph support the contention. Unlike the first three paragraphs, the fourth paragraph (1) states it is operative "[n]otwithstanding any other provision to the contrary," (2) applies not only to community college instruction but also to adult classes at lower grade levels, (3) applies only to employees assigned to teach not over 60 percent of full time, and (4) makes the classification as a temporary employee, and the limitation on becoming probationary, mandatory rather than permissive.

In contrast to the fourth paragraph's expressions of self-containment and command, the words of the first three paragraphs are permissive. They impose no conditions on the fourth. Thus the section's first sentence simply permits temporary employment of community college teachers, and each succeeding sentence of the first three paragraphs contains words that limit its operation to the *previously described* employment: "employment of such persons"; "[s]uch employment"; "[n]o person shall be so employed."

Section 13337.5's legislative history seems to confirm the independent operation of the fourth paragraph. The section was first enacted in 1967, in substantially its present form, as Senate Bill No. 316. As introduced on February 8, 1967, the bill contained the substance of only the present first three paragraphs. The Senate referred the bill successively to its committees on local government and education and adopted amendments proposed by the local government committee. The principal amendment added the present provisions of the fourth paragraph but applied them to "any person who is employed for 15 hours or less per week to teach adult or junior college classes." (See 1 Sen. J. (1967 Reg. Sess.) pp. 333, 369, 833, 863, 887.)

In light of evidence in the present record that 15 teaching hours per week is ordinarily a full-time assignment, that amendment probably would have relegated nearly all newly employed adult and community college teachers to temporary status, virtually depriving the original bill of practical meaning. Such an outcome was prevented by an "author's amendment," adopted by the Assembly and concurred in by the Senate, that limited applicability of the fourth paragraph to employees working no more than 60 percent of full time. (See 2 Assem. J. (1967 Reg. Sess.) p. 3006; 3 Assem. J. (1967 Reg. Sess.) p. 4422; 3 Sen. J. (1967 Reg. Sess.) pp. 3141, 3296.) Neither author of the original bill belonged to the Senate's local government committee, which had proposed the vitiating amendment. One of them, Senator Grunsky, was a member of the

Senate's education committee. (See Sen. Final History (1967) pp. 505, 507-508.)

The history thus indicates that the section's fourth paragraph as initially adopted by the Senate was at cross-purpose with the first three paragraphs. As modified and finally enacted the fourth paragraph was a compromise between (1) the objective of the authors to impose limits of purpose and duration on the authority to hire temporary community college teachers, and (2) the proposal of the local government committee to place virtually all newly hired community college teachers on temporary status.

Plaintiffs have submitted a copy of a letter dated June 26, 1967, from Senator Grunsky to the Governor, who then had the bill before him for signature. In urging the Governor to sign, Senator Grunsky said that it "allows the district to use hourly teachers without having them become probationary employees no matter how many months they are employed, provided such persons teach less than sixty percent of the hours considered a full time assignment for permanent employees, and provided they do not employ such person more than two semesters or quarters during any three year period." Those words do indicate a representation to the Governor by a coauthor of the bill that a district's authority under the fourth paragraph to hire temporary teachers for 60 percent or less of full time was subject to the third paragraph's limitation of no more than two semesters or quarters of temporary employment in any three-year period. The representation is offset, however, not only by the words of the bill but also by the Legislative Counsel's digest, which contradicts the Grunsky letter by portraying the fourth paragraph as independently operative.[2] That digest, printed on the bill's first page, was prominently available not only to the Governor but also to all legislators.

Finally, plaintiffs contend that language in *Balen* v. *Peralta Junior College Dist., supra,* 11 Cal.3d 821, 829, authoritatively construes the

---

[2] The digest describes the bill's final version as follows: "Authorizes junior colleges to hire teachers as temporary employees, pursuant to contract, for a semester or quarter of the school year if such additional teachers are needed because of higher enrollment of students during that semester or quarter as compared to other semester or quarter. Limits such employment to a total of two semesters or quarters during any consecutive three-year period.

"Provides that any person employed to teach adult or junior college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties is a temporary, not probationary employee."

fourth paragraph as subject to the third paragraph's limitation of temporary employment to no more than two semesters or quarters within three years. As pointed out above in connection with plaintiffs who were employed before 1967, *Balen* held that section 13337.5 could not be applied retroactively to divest them of previously acquired status. (11 Cal.3d at pp. 828-829, 830, fn. 9.) The holding of nonretroactivity would not have been necessary if the section by its terms did not purport to impose temporary status on a teacher in Balen's position. Balen taught continuously for four and a half years, never exceeding 40 percent of full time. (11 Cal.3d at pp. 825, 828.) Thus his employment went beyond the two-semester limitation of the third paragraph and could not be rendered temporary by the section unless—as we now hold—the fourth paragraph is applicable independently of the first three. Our present holding therefore was implicit in *Balen's* reaching the issue of nonretroactivity. *Coffey* v. *Governing Board* (1977) 66 Cal.App.3d 279, 291-293 [135 Cal.Rptr. 881], and *Ferner* v. *Harris* (1975) 45 Cal.App.3d 363, 371-372 [119 Cal.Rptr. 385], are disapproved insofar as they hold to the contrary.

III. *Has any statute consistently with section 13337.5 provided for a change from plaintiffs' temporary status?*

The fourth paragraph of section 13337.5 imposes two restrictions on giving other than temporary status to persons employed to teach community college classes only 60 percent of full time: the teacher (1) "shall be classified as a temporary employee," and (2) "shall not become a probationary employee under the provisions of Section 13446." The second restriction would be superfluous if the first were not construed to apply only to *initial* classification and not to preclude an otherwise authorized *subsequent* change from temporary status. That interpretation of the first restriction accords with the policy of strictly construing the temporary classification (*Balen, supra,* 11 Cal.3d at p. 826), and we adopt it here.

The second restriction prohibits the teacher's becoming a probationary employee under section 13446, which states that a "temporary employee who is not dismissed during the first three school months . . . of the school term for which he was employed . . . shall be deemed to have been classified as a probationary employee from the time his services as a temporary employee commenced."

That specification of section 13446 implies noninterference with reclassification under any other statute.[3] Yet we find no such statute. None of the sections pointed to by plaintiffs—13334, 13336, 13337, and 13337.3—supports plaintiffs' reclassification as other than temporary within the limitations of the fourth paragraph of section 13337.5.

■ Section 13334, which antedates section 13337.5, provides that "districts shall classify as probationary employees, those persons employed in positions requiring certification qualifications for the school year, who have not been classified as permanent employees or as substitute employees." Those words deal not with reclassification but with initial classification. Thus their application to plaintiffs is precluded by section 13337.5's command that they "shall be classified as . . . temporary . . . ."

Before 1971, section 13336 simply required that teachers be classified as "substitute employees" when employed "to fill positions of regularly employed persons absent from service." Plaintiffs do not claim substitute status; and in any event section 13336's application to plaintiffs is precluded by section 13337.5's restriction on initial classification.

A 1971 amendment to section 13336 added the following: "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status." Application of those words would not be prohibited by either restriction of section 13337.5's fourth paragraph because they provide not for initial classification but for reclassification under a provision other than section 13346. They apply, however, only to persons "employed for *one complete school year* as a temporary employee." (Italics added.) Other sections define a

___

[3]The dissenting opinion accurately points out that in new section 87482, successor to section 13337.5 in the 1976 recodification of the Education Code, the reference to section 13446 is replaced by one to section 87604 of the recodification, which simply requires that a community college district "employ each certificated employee as . . . [a] contract employee, regular employee, or temporary employee." (See dis. opn., *post,* p. 391, fn. 7.) That change of reference does not alter the duality of section 13337.5's command that teachers on 60 percent time (1) "shall be classified" as temporary and (2) "shall not become" probationary under a particular provision. Thus, new section 87482 continues to confine the absolute prohibition to initial classification and to refrain from restricting subsequent changes of classification unless under new section 87604.

complete school year of probationary employment as service for 75 percent of the days in the school year (§ 13328)[4] or 75 percent of the number of hours considered a full-time assignment (§ 13328.5).[5]

Those 75 percent requirements must have been intended to apply to the year of temporary employment qualifying (under § 13336) as the *equivalent* of "one year's employment as a probationary employee for purposes of acquiring permanent status." Plaintiffs do not claim to have met the 75 percent requirements; nor is it apparent how they could be met by anyone employed to teach "for not more than 60 percent of the hours per week considered a full-time assignment" (§ 13337.5).[6]

Section 13337's first paragraph provides: "Governing boards of school districts shall classify as temporary employees those persons requiring certification qualifications, other than substitute employees, who are employed to serve from day to day during the first three school months of any school term to teach temporary classes not to exist after the first three school months of any school term or to perform any other duties which do not last longer than the first three school months of any school term, or to teach in special day and evening classes for adults or in schools of migratory population for not more than four school months of any school

---

[4]"A probationary employee who, in any one school year, has served for at least 75 percent of the number of days the regular schools of the district in which he is employed are maintained shall be deemed to have served a complete school year. In case of evening schools, 75 percent of the number of days the evening schools of the district are in session shall be deemed a complete school year."

[5]"Notwithstanding Section 13328, a probationary employee employed by a community college district or a community college maintained by a unified or high school district who, in any school year consisting of two semesters or three quarters, has served more than 75 percent of the number of hours considered as a full-time assignment for permanent employees having similar duties in the community colleges of the district in which he is employed, shall be deemed to have served a complete school year."

The section just quoted, enacted in 1967, codified for community colleges a standard of 75 percent of full-time hours that was already implicit in section 13328's standard of 75 percent of school-year days. (*Vittal* v. *Long Beach Unified School Dist.* (1970) 8 Cal.App.3d 112, 119-121 [87 Cal.Rptr. 319].) To allow section 13328 to be satisfied regardless of minimum hours (e.g., by four one-hour days per five-day week) could lead to anomalies we do not believe were intended.

[6]Imposition of the 75 percent requirement on the "one complete school year as a temporary employee" prerequisite to probationary status under section 13336 is consistent with our conclusion that the pre-1967 plaintiffs (whose probationary status on 60 percent or less of full time antedated § 13337.5) became regular (permanent) part-time employees under section 13346.25 (which contains no reference to a "complete school year" or to any minimum hours or days that must have been worked).

term. If the classes or duties continue beyond the first three school months of any school term or four school months for special day and evening classes for adults, or schools for migratory population, the certificated employee, unless a permanent employee, *shall be classified as a probationary employee.* The school year may be divided into not more than two school terms for the purpose of this section." (Italics added.) ■ Plaintiffs fail to qualify for reclassification under that section because there is no showing that the existence of their duties or the classes they were hired to teach was limited to the first three months of the term, or that they were employed to teach special classes for adults or in migratory schools for not more than four months in a term.

■ Section 13337.3, enacted in 1971, (1) authorizes employment of temporary teachers under conditions that also are stated in the first paragraph of section 13337.5 and were not met by plaintiffs, and (2) provides in the language of section 13336 that a temporary employee "for one complete school year," if reemployed for the following year, shall be classified as probationary and the year of temporary employment shall be deemed probationary.[7] As already seen, reclassification under this provision, as under section 13336, required temporary employment for 75 percent of the days or full time teaching hours of a complete school year (§§ 13328, 13328.5) and so was not available to plaintiffs.

[7]Section 13337.3 states: "Notwithstanding the provisions of Sections 13336 and 13337, the governing board of a school district may employ as a teacher, for a complete school year, but not less than one semester during a school year, unless the date of rendering first paid service begins during the second semester and prior to March 15th, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees during a particular semester or year because a certificated employee has been granted leave for a semester or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board.

"Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a vacant position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status.

"For purposes of this section 'vacant position' means a position in which the employee is qualified to serve and which is not filled by a permanent or probationary employee. It shall not include a position which would be filled by a permanent or probationary employee except for the fact that such employee is on leave."

The final paragraph and the word "vacant" in the second paragraph were added in 1975.

■

IV. *Salary Claims and Procedural Defenses*

All plaintiffs claim additional compensation that would make what they receive for part-time work proportionate to the amounts paid full-time employees as provided by section 13503.1.[8] ■ The plaintiffs employed after November 8, 1967, however, are not entitled to that section's benefits because of its express exclusion of "any person classified as a temporary employee under Section 13337 and 13337.5." Since section 13337 and section 13337.5 each contains its own provisions for temporary classification, not dependent on those of any other section, we construe section 13503.1's exclusion to apply to employees such as plaintiffs who are classified under section 13337.5 alone.

As to the plaintiffs employed before November 8, 1967, the Court of Appeal correctly resolved their claims of additional compensation and the procedural defenses raised by the district. We therefore adopt the following parts of Justice Devine's opinion covering these matters:

■ "[Section 13503.1] requires pro rata pay for part-time regular or contract employees. Thus, apart from the defenses of the statute of limitations, laches and failure to seek administrative relief, the three pre-1967 plaintiffs are entitled to prorated wages as back pay. Against this conclusion, the district argues that section 13503.1 applies only to elementary and secondary schools and schools for the handicapped by its reference to sections 11003 to 11008, inclusive, and to 11052. But this reference merely points out the places where a minimum school day is defined. Section 13503.1 refers to '[a]ny *person* employed by a district.' (Italics added.) Further, the reference to 13337 and 13337.5, in excluding temporary employees classified under these sections, clearly implies that section 13503.1 *does* embrace community college districts in its positive part, otherwise the specific exclusion would be unnecessary.

---

[8]Section 13503.1 provides: "Any person employed by a district in a position requiring certification qualifications who serves less than the minimum schoolday as defined in Sections 11003 to 11008, inclusive, or 11052 may specifically contract to serve as a part-time employee. In fixing the compensation of part-time employees, governing boards shall provide an amount which bears the same ratio to the amount provided full-time employees as the time actually served by such part-time employees bears to the time actually served by full-time employees of the same grade or assignment. This section shall not apply to any person classified as a temporary employee under Section 13337 and 13337.5, or any person employed as a part-time employee above and beyond his employment as a full-time employee in the same school district."

"The district contends that the instructors are bound by the terms of their employment contracts. This is so when there is no statutory provision to the contrary. But it is not so in the face of statutory specification. (*Campbell v. Graham-Armstrong* [1973] 9 Cal.3d 482, 486-487 [107 Cal.Rptr. 777, 509 P.2d 689].) In *Campbell,* the teachers had contracted to teach one session of kindergarten at part-time salary at a rate of pay below the minimum salary set by statute for full-time employees. On the issue of a contractual waiver, it was held that pursuant to section 13338.1, the teachers' contractual agreement did not preclude their entitlement to full-time salary.

"The part-time employee who has attained regular or contract status 'generally serves under conditions comparable to those of his full-time counterpart.' (*Balen v. Peralta Junior College Dist., supra,* [11 Cal.3d] at p. 829.) The three regular teachers are entitled, under substantive law, section 13503.1, to pro rata pay.

*". . . Statute of Limitations*

"A mandamus proceeding by teachers seeking proper classification and salary is subject to Code of Civil Procedure section 338, subdivision (1), the three-year statute, because it is upon a liability created by statute. (*Vittal v. Long Beach Unified Sch. Dist.,* 8 Cal.App.3d 112 [87 Cal.Rptr. 319]; *Ingram v. Board of Education,* 36 Cal.App.2d 737, 739 [98 P.2d 527]; *Baldwin v. Fresno City etc. School Dist.,* 125 Cal.App.2d 44, 51 [269 P.2d 942].) The petition was filed on May 2, 1974, so it relates back to May 2, 1971. Those plaintiffs who are declared herein to have temporary status do not have rights that are affected by the statute of limitations. The three pre-1967 employees' status as probationary employees was acquired before May 2, 1971; their right to pro rata compensation commences July 1, 1971, and not earlier, because of the statute of limitations.

*". . . Laches*

"The trial judge did not make a finding on the subject of laches as related to the three employees who, under our decision, are entitled to probationary status and to pro rata pay. But we decide that, as a matter of law, these employees' rights are not barred by laches, because of the rather bewildering array of statutory changes which confronted them, so that, as was said in *Balen*: '[I]t is understandably difficult for an individual teacher to define conclusively his status at a particular time.'

[11 Cal.3d at] p. 827.) How and when to proceed toward judicial determination was not a simple matter. Indeed, [Balen's] case, which is similar to that of our three pre-1967 employees, filed December 4, 1970, was decided against him in the superior court by summary judgment and this judgment was sustained by the Court of Appeal [in a published opinion] though it was reversed by the Supreme Court June 28, 1974. But these plaintiffs commenced this proceeding even before the Supreme Court's decision. They should not be charged with unreasonable delay, in view of the complexity and duration of the comparable *Balen* litigation and of the district's uncompromising position (also understandable conduct in the circumstances).

"*. . . Failure to Exhaust Administrative Remedies*

"The district argues that no writ of mandate can be issued because the plaintiffs have not exhausted their administrative remedies.

"Prior to the enactment of the Rodda Act, there was no statutory procedure for an administrative review of an instructor's classification or salary. Accordingly, it was held that no application need be made to the college by the employee for acquisition of his proper status; no affirmative action was required by the governing board. The attainment of the proper classification was automatic. (*Vittal* v. *Long Beach Unified Sch. Dist., supra,* [8 Cal.App.3d 112 (87 Cal.Rptr. 319)]; *Holbrook* v. *Board of Education* [1951] 37 Cal.2d 316, 333-334 [231 P.2d 853]; 43 Cal.Jur.2d, Schools, § 461, p. 847.)

"Since 1972, under the Rodda Act, a second-year contract employee has been entitled to a hearing upon objection to the governing board's decision not to employ him as a regular employee. (§ 13346.32.)

"However, this statutory remedy presupposes that a decision is made by the board not to employ the second-year contract employee as a regular employee. In the case at bar, the district made no such decision with respect to plaintiffs, because the district considered plaintiffs to be temporary employees. Accordingly, plaintiffs received no notice of the board's decision pursuant to section 13346.30.

"Moreover, it has been held that the rule requiring exhaustion of administrative remedies is subject to exception if the petitioner knows what the agency's determination will be. (*Ogo Associates* v. *City of*

*Torrance* [1974] 37 Cal.App.3d 830, 834 [112 Cal.Rptr. 761].) In the present case, the board refused to discuss the matter because the issues were in other litigation.

"The district's contention is rejected."

The judgment is reversed with directions to the superior court to issue a writ of mandate ordering defendants to classify those plaintiffs who were employed prior to November 8, 1967, as part-time probationary certificated employees as of July 1, 1971, and as part-time regular certificated employees as of July 1, 1974, and to award them back pay from July 1, 1971, prorated according to their classifications; and to deny the writ as to those plaintiffs who were employed on or after November 8, 1967. Each side will bear its own costs of appeal.

Bird, C. J., Tobriner, J., Mosk, J., and Manuel, J., concurred.

**CLARK, J.,** Concurring and Dissenting.—

1. *Post-November 1967 Employees*

I agree with the majority's determination that the fourth paragraph of former Education Code section 13337.5[1] precluded tenure for the post-1967 employees, who always served less than 60 percent of full time.

---

[1]Except as otherwise noted, statutory references are to the Education Code prior to its recodification effective 30 April 1977.

Section 13337.5 provided: "Notwithstanding the provisions of Section 13337, the governing board of a school district maintaining a community college may employ as a teacher in grade 13 or grade 14, for a complete school year but not less than a complete semester or quarter during a school year, any person holding appropriate certification documents, and may classify such person as a temporary employee. The employment of such persons shall be based upon the need for additional certificated employees for grades 13 and 14 during a particular semester or quarter because of the higher enrollment of students in those grades during that semester or quarter as compared to the other semester or quarter in the academic year, or because a certificated employee has been granted leave for a semester, quarter, or year, or is experiencing long-term illness, and shall be limited, in number of persons so employed, to that need, as determined by the governing board. [¶] Such employment may be pursuant to contract fixing a salary for the entire semester or quarter. [¶] No person shall be so employed by any one district for more than two semesters or quarters within any period of three consecutive years. [¶] Notwithstanding any other provision to the contrary, any person who is employed to teach adult or community college classes for not more than 60 percent of the hours per week considered a full-time assignment for permanent employees having comparable duties shall be classified as a temporary employee, and shall not become a probationary employee under the provisions of Section 13446."

However, the majority is incorrect to the extent they imply that such employees might obtain tenure in different circumstances.[2]

The Legislature, in effect, has authorized several types of temporary instructor assignments. At least five were available to community college districts.[3] Each type, however, was subject to limitations that, if exceeded, might permit the employee to advance to contract (probationary) status. Such limitations were expressed both within the section authorizing a particular type of temporary assignment and in the general limitations of sections 13336, third paragraph, and section 13446.[4] It is inappropriate to construe limitations on one type of temporary assignment as also applying to a different type. For example, an employee hired under section 13337 advances to contract (probationary) status if reemployed beyond the initial three-month or four-month assignment. However, another employee hired under section 13337.3 (assignment for period ranging from one semester to a complete school year) does not advance to contract status unless reemployed the following school year.[5]

[2]The majority state that the fourth paragraph of section 13337.5 shall "apply only to *initial* classification and not to preclude an otherwise authorized *subsequent* change from temporary status." (*Ante*, p. 381.) The statement suggests that some employees who never worked more than 60 percent of full time might obtain tenure. The majority's analysis, of course, is based on instant plaintiffs' particular factual situations. However, as demonstrated in the text, the nature of all assignments pursuant to the fourth paragraph of section 13337.5 precludes obtaining tenure. Thus, so long as an assignment fits within the 60 percent standard of section 13337.5, fourth paragraph, differing factual situations would not require any different results.

[3]They were those authorized by section 13337 (three-month and four-month temporary employees; twenty-day emergency temporary employees), section 13337.3 (full year temporary employees filling vacancies), section 13337.5, paragraphs 1-3 (temporary assignments longer than one semester or quarter but less than one school year, needed because of vacancies or additional enrollment), and section 13337.5, paragraph 4 (temporary assignments of 60 percent or less of full time).

[4]Section 13336, third paragraph, provided: "Any person employed for one complete school year as a temporary employee shall, if reemployed for the following school year in a position requiring certification qualifications, be classified by the governing board as a probationary employee and the previous year's employment as a temporary employee shall be deemed one year's employment as a probationary employee for purposes of acquiring permanent status."

Section 13446 provided: "Governing boards of school districts may dismiss temporary employees requiring certification qualifications at the pleasure of the board. A temporary employee who is not dismissed during the first three school months, or in the case of migratory schools during the first four school months of the school term for which he was employed and who has not been classified as a permanent employee shall be deemed to have been classified as a probationary employee from the time his services as a temporary employee commenced."

[5]Because of the potentially confusing array of available temporary assignments, the Legislature in 1974 amended section 13335 to require an annual statement of the duration

The fourth paragraph of section 13337.5 created a unique temporary assignment, one whose limitation is not durational, but is based on hours worked per week. By expressly making inapplicable the durational limitations of section 13446, the Legislature has provided a type of assignment that may be continued from year-to-year so long as the 60 percent limitation is not exceeded.[6] (See *Santa Barbara Federation of Teachers* v. *Santa Barbara High Sch. Dist.* (1977) 76 Cal.App.3d 223, 239 [142 Cal.Rptr. 749].)

The durational limitations of other sections authorizing temporary assignments are inapplicable to the fourth paragraph of section 13337.5 for three reasons. First, that paragraph states its provisions apply "[n]otwithstanding any other provision to the contrary . . . ." That phrase plainly forbids using conflicting provisions of other statutes to alter the nature of the temporary assignment created by the fourth paragraph. To impose other statutes' durational limitations, in addition to the paragraph's own 60 percent limitation, would change the essential character of such temporary assignments, thus contravening the express words of the fourth paragraph. Second, other than the expressly excluded section 13446, the language of other sections pertaining to temporary assignments precludes their application to the fourth paragraph of section 13337.5. These include sections 13336 (applies only to assignments for a complete school year), 13336.5 (assignments of 75 percent of full time or more), 13337 (assignments limited by their own terms to three or four school months), 13337.3 (assignments for a complete school year), and paragraphs 1 to 3 of section 13337.5 (assignments for a complete school year

and type of assignment filled by each temporary employee. Such statement permits districts and employees to remain aware of rights, obligations, and limitations under temporary assignments.

[6]The flexibility provided by such assignments is essential if community colleges are to keep up with the changing needs of their clientele. As found by the trial court in the instant case: "The District finds it necessary to change course offerings constantly in response to such factors as the general economy. Within the confines of a single school year, it may be necessary to add and delete courses by reason of such changing community demand. The California layoff statutes . . . are inadequate to make these adjustments because such proceedings . . . occur at a time when it is not possible to foresee the specific changes in demand which will occur during the following school year." (Special finding of Fact No. 2.)

The district has drawn a convincing picture of staff and program inflexibility that would be created by conferring tenure upon large numbers of part time instructors. Their required annual reemployment would inflexibly commit a large portion of the district's scarce salary funds. The district then would find it difficult or impossible to shift funds to new, higher-demand courses.

or complete semester or quarter). Third, it distorts the statutory scheme to apply limitations of one type of assignment to the enabling language of another. This is demonstrated by the above example of sections 13337 and 13337.3. For all these reasons, the fourth paragraph of section 13337.5 is unencumbered by any durational limitation.[7]

In this sense, therefore, the fourth paragraph of section 13337.5 governs more than "initial classification." Rather, it authorizes a particular type of temporary assignment and establishes the single limitation thereto. So long as the parties do not exceed that 60 percent limitation, they are free to continue such assignment indefinitely.

The difficulty with the majority's explanation arises from its implication that, given different facts, the statutes might require a different result as to other 60 percent temporary employees hired after 1967. The majority's statutory analysis (*ante,* pp. 381-384), however, is equally applicable to the tenure entitlements of *all* 60-percent-or-less temporary employees hired pursuant to the fourth paragraph of section 13337.5. Limitations on other kinds of temporary assignments do not apply to an assignment under the fourth paragraph of section 13337.5. This same inapplicability exists as to the assignments of the instant plaintiffs as well as to any other individual hired pursuant to that paragraph. Thus, such other individuals would be equally ineligible for advancement beyond temporary status so long as they served no more than 60 percent of full time.

2. *Back Pay Award to Pre-November 1967 Employees*

I further dissent from the decision awarding pro rata back pay to the three pre-November 1967 employees. The majority—holding these em-

---

[7]The intent that no durational limitation apply to assignments under the fourth paragraph of section 13337.5 was underlined in the 1976 recodification of the Education Code. The Legislature eliminated the reference in that section's final sentence to the inapplicability of former section 13446. Section 13446 required advancement of an employee to probationary status after either three or four school months' service in temporary status. In place of that reference, the recodified section 87482 (former § 13337.5) refers to recodified section 87604, providing that a 60 percent temporary employee "shall not become a contract employee under the provisions of Section 87604." That latter section is not the same as former section 13446. The newer section 87604 contains no durational limitation, but simply provides that each community college instructor be employed either in contract, regular, or temporary status. This new reference to the basic classification statute—rather than one dealing with automatic advancement in status—demonstrates the intent that employees shall not be eligible for a change in status while employed as 60 percent temporary employees.

ployees are entitled to retroactive promotion to tenured status—find that section 13503.1 requires pro rata pay for such part time employees. However, section 13503.1, the sole authority relied upon by the majority, has no application to community colleges, but only to elementary and secondary levels. This is made clear by the section's own terms: "Any person employed by a district in a position requring certification qualifications who serves less than the minimum schoolday as defined in *Sections 11003 to 11008 [kindergarten to Grade 8], inclusive, or 11052 [high school]* may specifically contract to serve as a part-time employee. In fixing the compensation of part-time employees, governing boards shall provide an amount which bears the same ratio to the amount provided full-time employees as the time actually served by such part-time employees bears to the time actually served by full-time employees of the same grade or assignment. This section shall not apply to any person classified as a temporary employee under Section 13337 and 13337.5, or any person employed as a part-time employee above and beyond his employment as a full-time employee in the same school district." (Italics added.)

The italicized language shows the Legislature limited eligibility under section 13503.1 to grade levels described in sections 11003-11008 and 11052, that is, to elementary and secondary schools. It omitted reference to section 11103, the parallel section dealing with the community college minimum school day. The intent to exclude community colleges is apparent.

The statutory history also demonstrates that section 13503.1 applied only to elementary and secondary levels. Prior to 1968 the section applied to: "[a]ny person employed by a district in a position requiring certification qualifications who serves a lesser period of time than the majority of such employees in the same grades of the district are required to serve . . . ." An amendment in 1968 adopted the earlier quoted wording restricting eligibility to elementary and secondary levels. (Stats. 1968, ch. 1079, § 2.) The amendment thus eliminated mandatory pro rata pay for all employees and, in its place, required it only at elementary and secondary levels.

Furthermore, the 1976 reorganization of the Education Code reflects legislative understanding that section 13503.1 did not apply to the post-secondary level. In the reorganized code, section 13503.1 without change became section 45025, applicable solely to elementary and

secondary schools. No cognate section was codified in title 3 of the reorganized code, which contains provisions affecting community colleges. Such singular recodification has compelling weight because the Legislature doubly recodified those sections affecting both levels—once in title 2 (elementary and secondary education) and again in title 3 (post-secondary education).

Such reenactment of a section in substantially similar language is to be construed as a restatement or continuation of its former meaning. ([Reorganized] Ed. Code, § 3.) By such "restatement," the Legislature confirmed section 13503.1 never applied to community colleges.

Substantial reasons exist for the Legislature's not requiring pro rata pay for part time community college employees. The great variance in content, duration, purpose, and enrollment of college courses requires employing instructors of differing skills, preparation, backgrounds, professional accomplishments, and time availability. Among college employees, part time instructors often have less teaching experience and less state credentialling than full time staff. While full time staff must perform duties that include preparation, teaching, conducting office conferences, fulfilling committee assignments, designing and evaluating curriculum, and assisting with budget decisions, part time staff often need only prepare for and teach classes. In these circumstances, colleges are amply justified in offering part time employment at a rate of $13.86 per hour, as in the instant case, rather than an amount pro rated to a full time rate of $32 per hour, as plaintiffs seek.

Similarly, as compared to part time elementary and secondary employees, part time community college instructors often are professional persons holding full time jobs elsewhere, with primary career preparation in their full time occupations. Part time elementary and secondary teachers, on the other hand, generally are persons whose sole employment is their part time position, and whose career preparation is in teaching. Thus, a logical basis also exists for distinguishing between part time employees at the community college and elementary-secondary levels.

The exclusion of section 13337.5 temporary employees in the last sentence of section 13503.1 is read by the majority as impliedly qualifying nontemporary community college employees for pro rata pay. They reason that such exclusion would not be necessary unless the

remainder of section 13503.1 did apply to community college employees. A more reasonable interpretation, however, is that section 13337.5 —which encompasses both adult schools and community colleges —was cited simply to complete the exclusion of all temporary employees. Such exclusion requires citation both of sections 13337 (certain adult and day temporary employees) and 13337.5 (certain adult and college employees). A plain reading of the last sentence of section 13503.1 shows its intent was to deal with all temporary employees without regard to whether they taught elementary, secondary, adult, or college courses.

Thus, no requirement existed then or now for general pro rata pay for community college instructors. In such case, it is established that, where no statutory requirements apply, the level of instructor salaries is determined by the governing board (*Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482, 489 [107 Cal.Rptr. 777, 509 P.2d 689]) or by contractual agreement (*Holbrook* v. *Board of Education* (1951) 37 Cal.2d 316, 331 [231 P.2d 853]; *Richardson* v. *Board of Education* (1936) 6 Cal.2d 583, 586 [58 P.2d 1285].) As the trial court found, plaintiffs agreed to be paid at the district's hourly rate. (Special finding of fact No. 4.)

The agreed-upon rate, however, was subject to the pro rata minimum of section 13525. That section required plaintiffs be paid not less than "an amount which bears the same ratio to six thousand dollars ($6,000) as the time required of the person [plaintiffs] bears to the time required of a person employed full time." The full time assignment, of course, includes not only class hours, but additional laboratory, conference, office, and other assigned hours (52 Ops.Cal.Atty.Gen. 218, 220 (1969)), while plaintiffs' part time assignments generally were limited to classroom hours only.

Plaintiffs thus are entitled to recover as back pay not an amount pro rated to the salary of regular employees but the greater of either the agreed-upon hourly rate or the section 13525 minimum.

Richardson, J., concurred.

The petition of the plaintiffs and appellants for a rehearing was denied July 6, 1979. Clark, J., was of the opinion that the petition should be granted.