[No. A037354. First Dist., Div. Two. Feb. 17, 1988.]

UNITED TEACHERS OF UKIAH et al., Plaintiffs and Respondents,
v.
BOARD OF EDUCATION OF UKIAH UNIFIED SCHOOL
DISTRICT et al., Defendants and Appellants.

**COUNSEL**

Sandra Woliver, Kerry Cunningham, Daniel Fritz, Breon, Galgani, Godino & O'Donnell and Lozano, Smith, Smith & Woliver for Defendants and Appellants.

A. Eugene Huguenin, Jr., Kirsten L. Zerger, Diane Ross and Ramon E. Romero for Plaintiffs and Respondents.

**OPINION**

**KLINE, P. J.** —This case presents an appeal by the Board of Education of Ukiah Unified School District, the district superintendent, George A. Gustafson, and the school district (collectively, appellants) from the granting of a writ of mandate in a proceeding instituted by respondents, the United Teachers of Ukiah (the collective bargaining representative of the district's certificated employees) and three individual teachers employed by the district (collectively, respondents).

On appeal, appellants assert the writ of mandate was erroneously granted because: (1) the Public Employment Relations Board (PERB) had exclusive initial jurisdiction over the issues involved; (2) contrary to respondents' claims, appellants' actions did not violate Education Code section 45028;[1] and (3) respondents' action was barred by laches. Appellants further contend that the court imposed an inappropriate remedy by reclassifying certain individuals rather than ordering payment of adequate backpay. We reject these arguments and therefore affirm the judgment in its entirety.

## BACKGROUND

For a period beginning before January 1, 1970, and ending February 1, 1985, the contract between the United Teachers of Ukiah (the Teachers) and the Ukiah School District (the District) provided that any teachers hired from outside the district initially would be given up to five-years credit for prior teaching experience in determining his or her position on the salary schedule. In September 1982 the District hired a teacher from outside the district and, for the first time, gave him credit for more than five-years experience. Subsequently, three more teachers were hired from outside the district and received credit in excess of the five-year maximum. At trial, appellants asserted that all four teachers were granted the special credit because they were exceptionally gifted teachers who filled particular needs in the school district.

Respondents sought a writ of mandate, arguing that appellants' actions violated the requirement that "each person employed by a district in a position requiring certification qualifications . . . be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience." (§ 45028.) In response, appellants asserted their conduct was justified by a clause in the negotiated agreement between the Teachers and the District which provided that "The Board also reserves the right to make desirable adjustments and to grant reimbursements for certain extra duties and assignments." Carl Morgansen and Oscar Groves, past members of the District's negotiating team, testified in support of appellants' position. They stated that the Teachers were told the provision was intended to reserve to the District the right to place teachers on a higher salary schedule when the District had exceptional needs or wished to hire a teacher with outstanding qualifications.

The court accepted this testimony and concluded the parties had agreed to this interpretation of the provision. However, the court further determined that before July 28, 1983, the effective date of Government Code

---

[1] All statutory references are to the Education Code unless otherwise indicated.

section 3543.2, subdivision (d)[2]—which permits negotiated deviations from section 45028's uniformity requirement—the parties were legally prohibited from contracting in violation of section 45028. (See § 44924.[3]) Consequently, it held that the District had improperly granted to certain teachers additional credit based on a void contract provision and that such actions violated section 45028. The court went on to note that there was no Education Code violation after August 31, 1983, when the parties signed a new contract containing the "reservation of rights" clause which was then valid under Government Code section 3543.2, subdivision (d).

The court granted the writ of mandate and ordered the District "to permanently reclassify all teachers who were in its employ anytime during the period September, 1982, to August 31, 1983, who had more than five years of outside experience to credit them with all their years of teaching experience."

This timely appeal followed.

## DISCUSSION

### 1. *Deferral to Public Employment Relations Board*

■ Appellants assert that because their defense rested on an interpretation of the parties' negotiated agreement the PERB had initial jurisdiction over respondents' claim, since a violation of the agreement would constitute an arguable violation of the Educational Employment Relations Act.[4] The trial court determined that respondents' petition was founded upon preferential treatment assertedly violative of section 45028 and concluded that despite appellants' attempts to cast the dispute as a contractual question, "the solid substance of [the] Teacher's claim is unequal treatment in violation of the statute, and their petition fairly pleads only that grievance." Finally, the court observed, "I doubt that the Legislature . . . intended that a trial court be ousted from jurisdiction to hear and decide a clear Section 45028 claim whenever a respondent asserts a contractual defense. . . ."

---

[2] This new provision states that "Notwithstanding Section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon the request of either party, meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training and years of experience. If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code shall apply."

[3] This statute provides, in relevant part, that "any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void."

[4] The Educational Employment Relations Act (EERA) is set forth in Government Code section 3540 et seq.

Government Code section 3541.5 provides that "[t]he initial determination as to whether the charges of unfair practices are justified . . . shall be a matter within the exclusive jurisdiction of the [PERB]." Subdivision (b) of that section states that the PERB shall not have the authority to enforce agreements between the parties or to issue complaints on alleged violations of such agreements "that would not also constitute an unfair practice" under the EERA. It thus appears from the plain language of the statute that the Legislature intended the PERB to handle cases directly based upon unfair practices, i.e., violations of the EERA.

A recent appellate decision supports the view that the PERB's jurisdiction does not extend to all disputes brought by an employee against a school district employer. In *Wygant* v. *Victor Valley Joint Union High School Dist.* (1985) 168 Cal.App.3d 319 [214 Cal.Rptr. 205] the plaintiffs argued that the school district's "professional growth policy," which was used to set teacher salaries, violated section 45028. The school district maintained the PERB had jurisdiction over the plaintiffs' claim since the complaint raised a question as to whether the board of trustees had satisfied its obligation under the EERA to meet and negotiate in good faith. (Gov. Code, § 3543.5, subd. (c).)

The court noted that the cases cited by the District in support of their position all involved allegations of unfair practices or other violations of the EERA. It further noted that Government Code section 3540 provides that "[n]othing contained [in Government Code sections 3540-3549.3] shall be deemed to supersede other provisions of the Education Code and the rules and regulations of the public school employers which establish and regulate tenure or a merit or civil service system . . . ." (168 Cal.App.3d at p. 323.) It thus concluded that the "PERB does not have exclusive initial jurisdiction where a plaintiff's allegations are confined solely to a unilateral violation of Education Code section 45028 by a school district." (*Ibid.*)

We agree with *Wygant.*[5] We find nothing in the case or statutory law which requires that claims which assert only violations of the Education

---

[5] Appellants assert that *Wygant* is both factually and legally distinguishable from the instant case. First, they claim that the *Wygant* court refused to defer the case to the PERB because, unlike the present case, the unfair practice issue was only indirectly and remotely involved in the asserted claim. We disagree. The court's decision was not based on a perception that the unfair practice charge was only tangentially related; rather, the court's holding was squarely founded on the fact that the plaintiffs' action raised a claim under the Education Code and did not in any way implicate the EERA.

Appellants further insist that *Wygant* may be distinguished by the fact that Government Code section 3543.2, subdivision (d) (which allows for negotiated deviations from salary uniformity) did not apply to that case, since the agreement was not negotiated pursuant to that new provision. In the instant case the new provision was implicated only with respect to the agreement signed after the effective date of the new statute; the trial court expressly found that the Education Code violations occurred in the years preceding that statute's enactment.

Code be directed to the PERB simply because the defendant contends the EERA may be implicated in the resolution of the claim. To the contrary, we reject appellants' implicit contention that defendants may divest the courts of jurisdiction over Education Code violations simply by framing their defense in a fashion that arguably involves the EERA.

Two recent appellate decisions have reached conflicting conclusions on the question of when disputes founded upon asserted Education Code violations must be brought before the PERB before proceeding to the courts. In *McCammon* v. *Los Angeles Unified School Dist.* (1987) 195 Cal.App.3d 661 [241 Cal.Rptr. 1] (petn. for review den. Dec. 22, 1987), a teacher argued that certain negotiated pay classifications violated section 45028. The trial court held that the PERB had initial jurisdiction over the claim; the decision was affirmed on appeal. The appellate court emphasized the fact that McCammon was challenging *negotiated* provisions of the bargaining agreement and thus concluded that his claim involved an arguable violation of the union's duty under the EERA to fairly represent McCammon's interests. (195 Cal.App.3d at p. 665.)

Appellants urge us to follow *McCammon* since this appeal also involves conduct assertedly justified by a negotiated provision in the teachers' contract. We decline to do so. In our opinion, *McCammon* is fatally flawed because it is premised on the erroneous notion that *any* agreement, whether negotiated before or after the effective date of Government Code section 3543.2, subdivision (d), "renders the violation nonunilateral, and appropriately before the PERB." (*Ibid.*) As the trial court correctly noted, prior to the effective date of Government Code section 3543.2, subdivision (d), provisions which contravened the Education Code were completely invalid, regardless of whether they resulted from fair negotiations with the teachers' representatives. (§ 44924.) Consequently, we cannot say that the violation here was "nonunilateral" and thus subject to the PERB's jurisdiction.

Even more recently, another Court of Appeal determined that a cause of action to compel compliance with sections 44955 and 44956 did not have to be brought before the PERB in the first instance. (*Marshall* v. *Russo*■ (Cal.App.)) The court refused to follow *McCammon,* claiming the decision was "questionable in at least two respects" since it (1) failed to identify the unfair practice involved in misplacing a teacher on a salary schedule; and

In our opinion, the limited application of Government Code section 3543.2, subdivision (d) to the instant dispute does not present any material distinction between these cases which would preclude our following *Wygant* 's analysis.

(2) failed to recognize that rights mandated by the Education Code are nonnegotiable. (*Id.,* at p. 139.) We too recognize these failings in *McCammon's* analysis and thus conclude that preemption is not warranted where, as in this case, the respondents asserted only Education Code violations and appellants have failed to make a convincing showing that the EERA will be implicated in the resolution of the dispute.[6]

## 2. *Violation of Section 45028*

■ Appellants maintain the trial court erroneously determined their conduct violated section 45028; they insist their actions resulted from a legitimate exercise of discretion consistent with the statute's objective of uniformity. In support of their position they cite *Palos Verdes Faculty Assn. v. Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650 [147 Cal.Rptr. 359, 580 P.2d 1155] and *Mayer v. Board of Trustees* (1980) 106 Cal.App.3d 476 [165 Cal.Rptr. 655] which, they assert, stand for the proposition that despite the uniformity apparently mandated by section 45028, school districts retain some discretion in determining salary classification for teachers.

In the *Palos Verdes* case a teacher with one year of public school experience and five years private school experience was hired and, pursuant to the then-applicable rules, credited with only the one year of public school teaching time. One year later the standard was altered to provide credit for teaching experience in any accredited school, whether public or private. The plaintiff requested that his classification be changed in accordance with the new rule; when that request was denied he sought a writ of mandate to compel the district to comply with his demand. The Supreme Court held that section 13506 (now § 45028 under the reorganized code) required that the plaintiff be reclassified.

In reaching this conclusion the court observed that "no conflict [with the principle of uniform classification] would occur should a district decide to subclassify its top 'experience' classification in order to encourage the retention or recruitment of extremely experienced teachers." (*Palos Verdes,*

---

[6]We disagree with appellants' assertion that we should defer to the PERB under the authority of *El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946 [192 Cal.Rptr. 123, 663 P.2d 893]. In that case the school district brought a tort action against four uncertified labor unions for damages resulting from a teachers' strike led by the unions. The Supreme Court determined that the PERB had exclusive initial jurisdiction to hear the claim. However, in *El Rancho* the court observed that the trial court would *"of necessity* have to decide whether the strike was protected under EERA." (33 Cal.3d at p. 959, italics added.) Because it is not so clear that the EERA would be implicated in the determination of this action we cannot say that the courts should be denied jurisdiction over the Education Code violations asserted herein.

*supra,* at pp. 660-661, fn. 5.) Appellants rely heavily on this dictum, claiming that it validates their attempt to recruit particularly well-qualified teachers by offering higher initial salaries. We disagree.

Appellants' selective reading of *Palos Verdes* completely ignores other portions of the opinion which, in our judgment, fatally undermine their position. ■ For example, the court explained that the statute has "the twofold purpose of (1) *requiring* that teachers be classified for salary purposes, and (2) establishing that such classification proceed *wholly* on a uniform basis of years of training and years of experience." (*Id.,* at p. 661, italics in original.) ■ There simply is no way we can characterize appellants' preferential hiring policy as one predicated upon a *uniform* classification scheme when some teachers received credit for all prior experience and others were limited to a five-year maximum.

■ Even more to the point is the Supreme Court's later conclusion that "certified employees not occupying administrative or supervisory positions are to be classified for salary purposes strictly according to years of training and experience up to the applicable maximum . . . and that the principle of 'reasonable classification' [which left classification to the reasonable discretion of the district] may no longer be employed in justification of variations from such uniform treatment on the basis of considerations such as 'stabiliz[ing] continuity of service,' *'attracting new teachers,'* or 'policy changes necessitated by employment needs.' " (*Id.,* at p. 662, italics added, citations omitted.) ■ In the face of this language there can be no doubt that appellants' desire to recruit top-notch teachers does not in any way excuse their failure to comply with the requirement of classification uniformity under the Education Code.

Similarly, *Mayer v. Board of Trustees, supra,* 106 Cal.App.3d 476, provides no support for appellants' hiring practices. In that case the teachers sued to terminate enforcement of a bargained-for provision which stated that a teacher would be advanced to the next salary level only if he or she received a satisfactory performance rating for the preceding year. The court reviewed the *Palos Verdes* opinion and concluded that the challenged provision was a prototypical example of a pay incentive program which did not violate the statute's uniformity requirement.[7] The court noted that "there is not the remotest suggestion . . . that the unsatisfactory evaluations were improper, unfair, discriminatory, erroneous, or the result of favoritism," (*id.,* at p. 486) and determined that in each case the denial of salary advancement was not due to a lack of uniformity in classification but,

---

[7] In *Palos Verdes* the court observed that in enacting the statutory uniformity requirement the Legislature did not intend " 'to limit a school district governing board in developing pay incentive programs.' " (*Palos Verdes, supra,* at p. 660, fn. 5.)

rather, was "the consequence of petitioners' own failures to demonstrate professional competence." (*Id.,* at p. 489.)

In our view, because the program in *Mayer* was (1) uniformly applied and (2) legitimated by explicit language from the Supreme Court's *Palos Verdes* opinion it is patently distinguishable from the instant appeal. Moreover, on the facts described above we fail to see how *Mayer* can be read as validating the type of discretionary salary classification used by appellants. *Mayer* thus does nothing to change our conclusion that appellants' preferential hiring practices were a flagrant violation of section 45028.

### 3. *Application of Doctrine of Laches*

According to appellants' chronology of this dispute, as early as 1979 respondents had knowledge that the District took the position that, in exceptional cases, it could deviate from the five-year credit maximum in determining salary classifications. They further argue that since September 1982 respondents were aware of the District's hiring of two teachers who received credit beyond the five-year limit. Finally, appellants assert that in August 1983 respondents were given printed salary information which indicated that certain teachers had received more than five-years credit for prior teaching experience and that as early as November 1983 the Teachers discussed filing an unfair labor charge concerning that issue. Respondents filed their petition for a writ of mandate on September 27, 1985.

■ Appellants contend respondents' delay in seeking a writ of mandate prejudiced them because it caused them to assume certain costs and make other changes in the salary schedule which they might not have done if they believed the instant lawsuit would be filed. Under these circumstances, appellants maintain, respondents' claim should be barred by laches.

In disposing of this contention the trial court stated, "Correspondence between representatives of the parties unmistakably shows that Teachers' claim in this case was discussed in the bargaining session that resulted in the February, 1985, contract, that it wasn't resolved in bargaining, that Teachers informed School District that Teachers would be pursuing the matter legally and that School District acknowledged being so informed. Therefore, School District has shown no detrimental reliance, and I conclude that Teachers' claim is not barred by laches."

■ Generally speaking, the existence of laches is a question of fact to be determined by the trial court in light of all the applicable circumstances, and in the absence of manifest injustice or a lack of substantial support in the evidence its determination will be sustained." (*Miller* v. *Eisenhower*

*Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258], citations omitted.)

 While we do not have before us the correspondence which formed the basis for the trial court's decision,[8] there is substantial testimony in the record which provides ample support for the trial court's conclusion. For example, Joe Digeronimo, who was director of personnel for the District during the time of the preferential hires, admitted that during the contract negotiations which preceded the February 1985 contract he received a letter from George Cassell, who worked for the California Teachers Association, which stated that the Teachers considered the District's conduct to be both a violation of the Education Code and an unfair practice under the EERA. Mr. Digeronimo later stated that during negotiations the Teachers offered to put aside the issue presented in this appeal, and pursue the question in court, so it would not hamper reaching an agreement on the remainder of the contract.

This testimony clearly shows that appellants were well aware of the Teachers' concern with the issue of uniformity in salary classification both during and after the negotiation of the 1985 contract. Moreover, as Mr. Digeronimo acknowledged, they were put on notice that the Teachers intended to pursue the issue if it was not resolved satisfactorily during the negotiation of the new contract. This evidence plainly contradicts appellants' claim of prejudice and strongly supports the trial court's determination that the doctrine of laches ought not be invoked in this case.

## 4. *Proper Remedy*

The trial court concluded that the District violated the Education Code only during the 1982-1983 school year since after July 28, 1983, when Government Code section 3543.2, subdivision (d), became effective, the parties were free to—and, in fact, did—agree to the application of nonuniform salary standards. The court ordered that all affected teachers employed by the District during the 1982-1983 year be reclassified to afford them full credit for all prior teaching experience in California public schools.[9] Appellants maintain this was an improper remedy and

---

[8] If appellants wished to prove the correspondence did not adequately support the trial court's decision they were obligated to provide this court with the documents necessary to such a determination. In the absence of these letters we have relied on testimony in the record concerning this correspondence.

[9] This case was not brought as a class action but, rather, as a representative action under Government Code section 3543.1, subdivision (a), on behalf of all bargaining unit members who were improperly classified by the District. At oral argument appellants' counsel did not dispute the proposition that, if a remedy were granted herein, it would extend to all teachers employed by the District during the 1982-1983 school year who had not received credit for

argue that the individual teachers (1) should not have been reclassified, but should have been awarded backpay only for the 1982-1983 school year; or, alternatively, (2) should have been reclassified beginning in 1985-1986.

Appellants argue that because they had the right, beginning in 1983, to credit some teachers for all prior experience and to withhold that credit from others the teachers who received less than full credit are only entitled to backpay for the one year when that practice was improperly applied.

We agree with the trial court's reasoning that the only way to carry out the mandate of section 45028 was to reclassify all affected teachers so that they received full credit for their past teaching experience.[10] In our view, it would not be sufficient to order backpay: if the District had conducted itself in accordance with the Education Code's requirements the affected teachers would not simply have received a higher salary for that one year, but would have continued to receive greater salaries due to their higher initial placement on the salary schedule.

Appellants claim that teachers have no vested right to any particular salary, salary schedule or salary schedule placement; accordingly, they insist that since they could have reduced the teachers' salaries beginning in 1983 the teachers who were not given full credit only were deprived of one year's salary at the higher level.

We find this position untenable. ██ In *Aebli* v. *Board of Education, supra,* 62 Cal.App.2d 706, the court concluded that "When [a school] board has once adopted a policy and, without fraud, error or mistake, rates a teacher under that policy, although the board may change its policy as to new entrants into the department, it has no power years later to go back and review that teacher's case, and to re-rate that teacher prospectively, on the theory that the original rating was too high. The board having once acted lawfully in rating a teacher has exhausted its power over that subject matter." (*Id.,* at p. 758.)[11] ██ Thus, under *Aebli* once the affected teachers in this case received full credit for past teaching in California public schools and were elevated to their proper salary classification, they could not be demoted to a lower salary level. This is so despite the negotiated agreement

all prior teaching experience in California public schools. Counsel estimated the total number of such teachers to be between six and eight.

[10] The court concluded that the other remedy—requiring that the two favorably treated teachers hired in September 1982 be reclassified downward—was unacceptable as it would interfere with those teachers' vested rights. (See *Aebli* v. *Board of Education* (1944) 62 Cal.App.2d 706 [166 Cal.Rptr. 826, 614 P.2d 258], *infra.*)

[11] In *Palos Verdes, supra,* the Supreme Court declined to address the propriety of downward classifications, and thus left undisturbed *Aebli's* conclusion on this issue. (21 Cal.3d 650, 664.)

which permitted the board to make distinctions in setting salary classifications, since under *Aebli* such variations in classification could not be applied retroactively to teachers who already had been classified for salary purposes.

█ We of course recognize that a board may impose a uniform salary cut on all teachers within a particular rating. (*Aebli, supra,* 62 Cal.App.2d at p. 758.) *Brown* v. *Hanford Elementary School Bd.* (1968) 263 Cal.App.2d 170 [69 Cal.Rptr. 154], which appellants cite as authority for their claim that a board may reduce teacher salaries, merely illustrates this undisputed point. █ However, appellants are not claiming that they would have uniformly reduced the salaries of all teachers at a particular level. Instead, they apparently hoped to maintain certain teachers at a higher salary level and, beginning in 1983, reduce the other teachers to a lower level that, in essence, would not afford full credit for past teaching. In our view, this is prohibited by *Aebli's* holding.

Finally, we reach appellants' contention that by accepting contracts for employment which provided less than full salary credit for past teaching the teachers waived the benefits of section 45028 (and are therefore limited to reclassification beginning in 1985, when this lawsuit was filed). In support of this position appellants cite *Vittal* v. *Long Beach Unified Sch. Dist.* (1970) 8 Cal.App.3d 112 [87 Cal.Rptr. 319] where it was held that the teacher had waived certain permanent status rights and the accompanying salary benefits under the Education Code by contracting to work on a hourly basis. *Vittal* is inapposite since it was decided prior to the operative date of Education Code section 44924 which provides that "any contract or agreement . . . made by any employee to waive the benefits of this chapter or any part thereof is null and void." Accordingly, in this case the teachers' rights to uniform salary classification under section 45028 were unaffected by their agreements to teach at lower salary levels. (*Campbell* v. *Graham-Armstrong* (1973) 9 Cal.3d 482, 486-487 [107 Cal.Rptr. 777, 509 P.2d 689] [plaintiffs' agreement to accept part-time employment did not preclude reclassification to full-time position]; *Peralta Federation of Teachers* v. *Peralta Community College Dist.* (1979) 24 Cal.3d 369, 386 [155 Cal.Rptr. 679, 595 P.2d 113].)

## 5. *Disposition*

The judgment is affirmed. The parties to bear their own costs on appeal.

Smith, J., and Benson, J., concurred.