[No. B034956. Second Dist., Div. One. Dec. 22, 1989.]

SALLY DIXON et al., Plaintiffs and Respondents, v.
BOARD OF TRUSTEES OF THE SAUGUS UNIFIED SCHOOL
DISTRICT et al., Defendants and Appellants.

[Opinion certified for partial publication.*]

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 3 of the Discussion.

1272

COUNSEL

Atkinson, Andelson, Loya, Ruud & Romo and James C. Romo for Defendants and Appellants.

Schwartz, Steinsapir, Dohrmann & Sommers and Michael R. Feinberg for Plaintiffs and Respondents.

OPINION

DEVICH, J.—The Saugus Teachers' Association (STA) and Sally Dixon (collectively petitioners) obtained a writ of mandate commanding the Board of Trustees of the Saugus Union School District (Board), Board President Jeffry White, Board Clerk Marilynn Blaylock, Board Members Betty Lund, Daniel Spangle, and Michael Rayfield, and Board Secretary and Superintendent of Schools James Foster (collectively appellants) to place Dixon at column V, step 12 of the Saugus Union School District's (District) certificated staff salary schedule[1] and to provide backpay for the periods that Dixon was improperly classified. We affirm the judgment granting the petition for writ of mandate.

BACKGROUND

For the 13-year period prior to her resignation in August 1979, Dixon was a permanent, certificated teacher for District. At the time of her resignation, Dixon's salary classification was column V, step 12, District's highest salary classification for certificated personnel.

On July 1, 1980, Dixon was reemployed by District as a permanent, certificated teacher. However, due to a provision contained in the collective

---

[1] Pursuant to a provision contained in various collective bargaining agreements between STA and District (hereafter referred to as salary regulation A), a permanent, certificated employee's classification on the salary schedule is calculated "on the basis of training, years of service in [District], and prior service." The salary schedule is arranged in a grid-like format wherein the vertical columns represent the educational background of the teacher (e.g., teaching credential and degrees earned) and the horizontal columns, or "steps," represent the number of years of teaching experience.

bargaining agreement then in effect, Dixon was classified at column V, step 6, rather than at her previous classification of step 12.[2]

Pursuant to the procedure set forth in the 1979-1982 collective bargaining agreement, Dixon filed a grievance with Board. On July 15, 1981, Board rejected Dixon's demand that she be placed at her former salary classification.

On June 7, 1982, Dixon filed a petition in the trial court for a peremptory writ of mandate commanding Board to place Dixon at her previous salary classification. On July 22, 1982, following a hearing, the trial court (Hon. John Cole presiding) denied Dixon's petition without prejudice on the basis that Dixon failed to exhaust her administrative remedies.

On February 11, 1983, pursuant to the nonbinding arbitration provisions of the 1979-1982 collective bargaining agreement, a hearing was conducted before an arbitrator. In a decision issued on March 22, 1983, the arbitrator determined that District violated salary regulation A when, upon reemployment of Dixon, District gave her credit for only six of her thirteen years of teaching experience; salary regulation B did not provide a defense to District since Dixon's previous teaching experience was performed within District; and Education Code sections 44931[3] and 45028[4] were not inconsistent with the provisions of the 1979-1982 collective bargaining agreement. The arbitrator recommended that District place Dixon at column V, step 12 of

---

[2] This provision of the 1979-1982 collective bargaining agreement, hereafter referred to as "salary regulation B," stated that "[t]eaching experience outside [District] may be recognized to a maximum of five years on the [salary] schedule." Despite the plain language of salary regulation B, District maintained that it was applicable to Dixon.

[3] Unless otherwise stated, all statutory references are to the Education Code.

Section 44931 provides: "Whenever any certified employee of any school district who, at the time of his resignation, was classified as permanent, is reemployed within 39 months after his last day of paid service, the governing board of the district shall, disregarding the break in service, classify him as, and restore to him all of the rights, benefits and burdens of, a permanent employee, except as otherwise provided in this code; provided, that time spent in active military service, as defined in Section 44800, subsequent to the last day of paid service shall not count as part of the aforesaid 39-month period; and provided further, that any such employee who has engaged in active military service subsequent to his last paid service and who resigned more than 39 months prior to October 1, 1949, shall be deemed to have complied with all requirements of this section if he is or has been reemployed before July 1, 1950."

[4] Section 45028 requires the uniform treatment of certificated teachers when classified on a salary schedule. In pertinent part, this statute provides: "Effective July 1, 1970, each person employed by a district in a position requiring certification qualifications, except a person employed in a position requiring administrative or supervisory credentials, shall be classified on the salary schedule on the basis of uniform allowance for years of training and years of experience. Employees shall not be placed in different classifications on the schedule, nor paid different salaries, solely on the basis of the respective grade levels in which such employees serve."

the salary schedule and provide her with backpay. The arbitrator's nonbinding decision was rejected by Board on April 5, 1983.

On June 28, 1983, Dixon filed a petition for writ of mandate alleging that appellants violated salary regulation A as well as sections 45028 and 44931.[5]

On September 22, 1983, the trial court (Hon. Bruce Geernaert presiding) held that although section 44931 compelled District to place Dixon at column V, step 12 upon reemployment, Dixon had contracted away her rights under section 44931 when she agreed to work for District at a lower rate of pay. The trial court further determined that petitioners' allegation of breach of applicable collective bargaining agreements constituted an arguably unfair practice, an allegation falling within the exclusive initial jurisdiction of the Public Employment Relations Board (PERB). (See Gov. Code, § 3541.5.) Accordingly, in an order filed on October 17, 1983, the trial court denied the petition insofar as it alleged a violation of section 44931 and abated the proceedings as to the allegation of breach of the collective bargaining agreements so that petitioners could exhaust their administrative remedies before PERB. (See *Fresno Unified School Dist.* v. *National Education Assn.* (1981) 125 Cal.App.3d 259, 274 [177 Cal.Rptr. 888].)

On March 23, 1984, petitioners filed an unfair labor practice charge with PERB. On November 29, 1984, PERB dismissed petitioners' charge as untimely since more than six months had elapsed between the alleged violation of the collective bargaining agreements and the filing of the charge. (See Gov. Code, § 3541.5, subd. (a).) Notice of PERB's decision was filed by petitioners with the trial court on September 24, 1985.

On February 23, 1988, petitioners filed a motion in the trial court to resume the previously abated proceedings on their petition for writ of mandate. Additional declarations and other evidence were attached to the motion to bring the petition current and to apprise the trial court of the proceedings which occurred since the matter was abated.

Hearings on the petition were conducted on March 10 and 14, 1988. The trial court (Hon. Miriam Vogel presiding)[6] held that Judge Geernaert's October 17, 1983, order finding that Dixon contracted away her rights under section 44931 was merely interlocutory and therefore subject to redetermination; Judge Geernaert's order was incorrect since section 44924

---

[5] On August 18, 1983, a first amended petition for writ of mandate was filed adding STA as a petitioner.

[6] Judge Vogel was assigned to the department formerly presided over by Judge Geernaert when petitioners filed their February 23, 1988, motion.

prohibits a contract waiving the benefits conferred under section 44931;[7] and section 44931 compelled District to classify Dixon at column V, step 12. On April 20, 1988, a judgment granting the petition for writ of mandate was filed.

## ISSUES

Appellants contend that section 44931 does not apply to the salaries of reemployed certificated employees, an issue of first impression. However, appellants urge this court not to reach the merits of this issue since they contend reversal of the trial court's judgment is mandated because the trial court improperly determined an issue already determined by a previous judge; petitioners have failed to exhaust their administrative remedies; and the trial court abused its discretion when it failed to dismiss the petition for lack of prosecution. We deal with the procedural issues first.

## DISCUSSION

### 1. Redetermination of Judge Geernaert's Ruling

■ Appellants contend that it was erroneous for Judge Vogel to determine an issue already decided by another judge. We disagree.

■ ■ ■ ■ Not being appealable, the order partially denying the petition and abating the proceedings pending petitioners' exhaustion of administrative remedies was merely interlocutory (*Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594])[8] and subject, upon consideration of all the evidence, to redetermination by a different judge deciding the remainder of the matter. (See *Tilem* v. *City of Los Angeles* (1983) 142 Cal.App.3d 694, 706 [191 Cal.Rptr. 229]; *Lacey* v. *Bertone* (1952) 109 Cal.App.2d 107, 110-111 [240 P.2d 395]; 7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 8, p. 458.)[9]

---

[7] Section 44924 provides: "Except as provided in Sections 44937 and 44956, any contract or agreement, express or implied, made by any employee to waive the benefits of this chapter or any part thereof is null and void. [¶] Notwithstanding provisions of this or any other section of this code, governing boards of school districts may employ persons in positions requiring certification qualifications on less than a full-time basis."

[8] The reporter's transcript of the September 22, 1983, hearing reveals it was clearly understood by the parties and the trial court that a judgment was not being entered and that the October 17, 1983, order was not appealable. The absence of a judgment distinguishes the case at bench from *Watterson* v. *Owens River Canal Co.* (1922) 190 Cal. 88, 96 [210 P. 625], wherein a judgment of abatement was held to constitute a final judgment.

[9] Appellants' related argument that petitioners failed to comply with Code of Civil Procedure section 1008 since they allegedly failed to either bring the motion for reconsideration within 10 days or demonstrate a different set of facts is without merit. Code of Civil Proce-

Moreover, even if we agreed with appellants' argument that Judge Vogel should have blindly accepted Judge Geernaert's earlier ruling on this issue, we would remand the matter for entry of a judgment denying the petition for writ of mandate which would be followed by a new appeal wherein petitioners would assert that Judge Geernaert's ruling was erroneous. Inasmuch as "any contract or agreement, express or implied, made by any employee to waive the benefits of [the chapter containing section 44931] is null and void" (§ 44924), Judge Vogel properly determined that Judge Geernaert's interim ruling was erroneous.

2. Exhaustion of Administrative Remedies

Appellants contend that the trial court was without jurisdiction to grant the petition for writ of mandate since petitioners failed to exhaust their administrative remedies. This contention is without merit.

As discussed above, Judge Geernaert abated the proceedings on the petition for writ of mandate so that petitioners could exhaust their administrative remedies before PERB. PERB dismissed petitioners' unfair practice charge as untimely since more than six months had elapsed between the alleged violation of the collective bargaining agreements and the filing of the charge.

PERB "provides an administrative remedy for unfair practices and violation of Government Code sections 3540-3549.3. (Gov. Code, § 3541.3, subd. (i).) Where unfair practices are alleged . . . , '[t]he initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purpose of this chapter, shall be a matter within the exclusive jurisdiction of the board.' (Gov. Code, § 3541.5; [citations].)" (*Wygant* v. *Victor Valley Joint Union High School Dist.* (1985) 168 Cal.App.3d 319, 322 [214 Cal.Rptr. 205].) However, PERB does not have exclusive jurisdiction where a pure Education Code violation (as opposed to an arguably unfair practice) is alleged. (*United Teachers of Ukiah* v. *Board of Education* (1988) 201 Cal.App.3d 632, 640 [251 Cal.Rptr. 499].)

In *Wygant,* a certificated teacher petitioned for a writ of mandate contending that a school district's salary policy violated section 45028. Noting that the teacher's "sole allegation [was] that the district's professional growth policy violate[d] the uniformity mandated by Education Code section 45028" (168 Cal.App.3d at p. 323), the *Wygant* court held that, under those circumstances, "the normal jurisdiction of a trial court over civil

dure section 1008 has no bearing on the case at bench since petitioners did not file a motion for reconsideration; rather, they reinstated proceedings which had been abated.

disputes is not superseded by the area of exclusive jurisdiction of PERB provided by Government Code section 3541.5, at least to the extent the violation of section 45028 is not pursuant to mutual agreement as authorized by Government Code section 3543.2, subdivision (d).[10]" (*Ibid.*)

In *McCammon* v. *Los Angeles Unified School Dist.* (1987) 195 Cal.App.3d 661 [241 Cal.Rptr. 1], a teacher sought a writ of mandate, contending that the school district's salary schedule, which was a part of the collective bargaining agreement between the school district and the teachers' collective bargaining representative, violated section 45028. The *McCammon* court held, without analysis, "that incorrect placement on the salary table constitutes an unfair practice" (*id.* at p. 664), thereby vesting PERB with initial jurisdiction. The *McCammon* court distinguished *Wygant* on the basis that the case before it involved the provisions of a collective bargaining agreement which "logically render[ed] the violation nonunilateral, and appropriately before the PERB." (*Id.* at p. 665.)

*McCammon* was severely criticized in *United Teachers of Ukiah* v. *Board of Education, supra,* 201 Cal.App.3d 632, wherein three teachers and their collective bargaining representative complained that a school district violated section 45028 by giving certain newly-hired teachers more than five years of credit for prior teaching experience, an act prohibited by the collective bargaining agreement. In rejecting the school district's argument that PERB had initial jurisdiction, the *United Teachers* court indicated that "*McCammon* is fatally flawed because it is premised on the erroneous notion that *any* agreement, whether negotiated before or after the [July 28, 1983] effective date of Government Code section 3543.2, subdivision (d), 'renders the violation nonunilateral, and appropriately before the PERB.' [Citation.] As the trial court correctly noted, prior to the effective date of Government Code section 3543.2, subdivision (d), provisions which contravened the Education Code were completely invalid, regardless of whether they resulted from fair negotiations with the teachers' representatives. (Ed. Code, § 44924.) Consequently, we cannot say that the violation here was 'nonunilateral' and thus subject to the PERB's jurisdiction. [¶] . . . [The *McCammon* decision was 'questionable in at least two respects' since it (1) failed to identify the unfair practice involved in misplacing a teacher on a salary schedule; and (2) failed to recognize that rights mandated by the

---

[10] Government Code section 3543.2, subdivision (d), created an exception to the mandate of section 45028, effective July 28, 1983. This statute provides: "Notwithstanding Section 45028 of the Education Code, the public school employer and the exclusive representative shall, upon the request of either party, meet and negotiate regarding the payment of additional compensation based upon criteria other than years of training and years of experience. If the public school employer and the exclusive representative do not reach mutual agreement, then the provisions of Section 45028 of the Education Code shall apply."

Education Code are nonnegotiable. [Citation.]" (201 Cal.App.3d at pp. 639-640, original italics.)

Regarding *McCammon*'s holding that a dispute concerning salary constitutes an unfair practice, *California School Employees Assn.* v. *Azusa Unified School Dist.* (1984) 152 Cal.App.3d 580 [199 Cal.Rptr. 635], a case predating *McCammon,* is also instructive. In that case, the collective bargaining representative for certain classified school employees argued that a school district's refusal to pay particular employees wages for periods those employees were prevented from working due to the absence of students violated section 45203.[11]

In rejecting the school district's argument that the failure to pay wages which are due an employee constituted an unfair practice thereby vesting initial jurisdiction in PERB, the court stated: "Wages are mandatory subjects of bargaining between the representatives of employers and employees. [Citations.] However, the fact that wages are the subject of the dispute at bar does not resolve the question whether refusal to pay wages claimed under section 45203 constitutes an unfair practice. Section 3543.5 of the Government Code lists five unlawful practices of employers and Government Code section 3543.6 is the comparable listing of employee organization activities which are prohibited. [¶] A review of judicial decisions discussing 'unfair practices' discloses that the activities of representatives of employers or employees in those cases 'arguably' fell within the activities proscribed by Government Code sections 3543.5 or 3543.6. [Citations.]" (152 Cal.App.3d at pp. 591-592, fns. omitted.)

With this background, we now focus on the merits of appellants' contention which is primarily based on the authority of *McCammon* v. *Los Angeles Unified School Dist., supra,* 195 Cal.App.3d 661. Initially, we conclude that, contrary to *McCammon*'s ipse dixit holding, a school district's improper placement of a teacher on the salary schedule does not constitute an unfair practice as such an act is not of the same character as the unfair practices prohibited by Government Code section 3543.5.[12] (See *California*

---

[11] Section 45203 provides, in pertinent part: "[O]n any schoolday during which pupils would otherwise have been in attendance but are not and for which certificated personnel receive regular pay, classified personnel shall also receive regular pay whether or not they are required to report for duty that day."

[12] Government Code section 3543.5 provides: "It shall be unlawful for a public school employer to:

"(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(b) Deny to employee organizations rights guaranteed to them by this chapter.

"(c) Refuse or fail to meet and negotiate in good faith and with an exclusive representative.

*School Employees Assn.* v. *Azusa Unified School Dist., supra,* 152 Cal.App.3d at p. 592.)

■ Moreover, to the extent the alleged section 45028 violation in the case at bench was based on collective bargaining agreements negotiated prior to July 28, 1983 (the effective date of Gov. Code, § 3543.2, subd. (d)), such a provision, even if mutually negotiated, would be rendered null and void by section 44924[13] and therefore outside of PERB's initial jurisdiction. (*United Teachers of Ukiah* v. *Board of Education, supra,* 201 Cal.App.3d at p. 639.)[14]

Finally, to the extent the alleged section 45028 violation in the case at bench concerns mutually negotiated provisions of collective bargaining agreements entered after July 28, 1983, *McCammon* is distinguishable since petitioners do not allege that the provisions of the collective bargaining agreements violate section 45028; rather, petitioners assert that section 45028 and the collective bargaining agreements are harmonious and that both mandate Dixon being placed at a higher level on the salary schedule.

■ For the foregoing reasons, we conclude that PERB did not have initial jurisdiction over petitioners' 45028 allegation.

■ Notwithstanding the previous discussion, it is crucial to recognize that, although section 45028 was one of the statutory bases upon which petitioners sought relief, the trial court did not base its ruling on section 45028; rather, the writ of mandate was issued on the basis of appellants' violation of section 44931. We must therefore determine whether PERB had initial jurisdiction over alleged violations of this section of the Education Code.

Unlike section 45028, to which the Legislature has created an exception (Gov. Code, § 3543.2, subd. (d)), no similar exception to section 44931 exists. Therefore, any provisions contained in a collective bargaining agreement which conflict with section 44931 are null and void pursuant to

"(d) Dominate or interfere with the formation or administration of any employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another.

"(e) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

[13] For the text of section 44924, see footnote 7, *ante.*

[14] In light of section 44924, we agree with *United Teachers of Ukiah* v. *Board of Education, supra,* 201 Cal.App.3d at pages 639-640, that, to the extent *McCammon* v. *Los Angeles Unified School District, supra,* 195 Cal.App.3d 661, purports to apply to collective bargaining agreements negotiated before the effective date of Government Code section 3543.2, subdivision (d), its holding is incorrect.

section 44924.[15] Moreover, as with section 45028, we conclude that a violation of section 44931 is not of the same character as the unfair practices prohibited by Government Code section 3543.5. (*California School Employees Assn.* v. *Azusa Unified School Dist., supra*, 152 Cal.App.3d at p. 952.)

Accordingly, we hold that petitioners' allegation that appellants violated section 44931 constituted a pure Education Code violation and therefore PERB did not have initial jurisdiction over this allegation. (*California School Employees Assn.* v. *Azusa Unified School Dist., supra*, 152 Cal.App.3d at pp. 592-593; *Wygant* v. *Victor Valley Joint Union High School Dist., supra*, 168 Cal.App.3d at pp. 324-325; *United Teachers of Ukiah* v. *Board of Education, supra*, 201 Cal.App.3d at p. 640.)

3. Petitioners' Alleged Lack of Diligence *

. . . . . . . . . . . . . . . . . . . . .

4. Applicability of Section 44931 to the Salaries of Reemployed Certificated Employees

 Relying on the history of section 44931, particularly the urgency amendment of May 16, 1947, appellants argue that the statute applies solely to retirement benefits of reemployed certificated employees and not to their salary classifications. As we explain below, appellants' construction of section 44931 is erroneous.

On May 23, 1945, chapter 428, an urgency measure adding section 13502 to the Education Code, was enacted.[19] Through various amendments discussed below, section 13502 ultimately became current section 44931.

---

[15] Although salary regulation B is arguably violative of section 44931, as applied to Dixon, it is not inconsistent with section 44931's mandate since all of Dixon's teaching experience was performed *within* District.

* See footnote, *ante,* page 1269.

[19] Statutes 1945, chapter 428, provided: "*The people of the State of California do enact as follows:*

"Section 1. Section 13502 is added to the Education Code, to read:

"13502. Whenever any certificated employee of any school district who, at the time of his resignation, was classified as permanent, is, or has been, reemployed within three years after his last day of service the governing board of the district shall disregard the break in service of said employee and classify him as, and restore to him all of the rights of, a permanent employee; provided, that if said employee at the time of resignation was a member of any State or district retirement system, he shall be reinstated as a member of said system or systems with all rights previously held, including any credit for prior service; provided, further, that the period of the absence from service shall not be counted as time served for any purpose.

On May 16, 1947, another urgency measure was enacted which amended section 13502.[20]

Less than two months later, on July 11, 1947, another urgency measure amending section 13502 was enacted. This measure changed section 13502's reference to the restoration of "rights" to the restoration of "rights, benefits and burdens," increased the length of resignation from 36 to 39 months, and segregated this portion of section 13502 from its remaining provisions, along with additional material, which were placed in newly created sections of the Education Code relating to retirement systems.[21]

---

"Sec. 2. This act is hereby declared to be an urgency measure, necessary for the immediate preservation of the public peace, health and safety, within the meaning of Section 1 of Article IV of the Constitution and shall therefore go into immediate effect. A statement of the facts constituting such necessity is as follows:

"Because of the effects of the war upon enrollment at teacher-training institutions and the withdrawal of teachers from the profession to go into war service, a serious teacher shortage has developed in many sections of the State, thus seriously impairing the educational system of the State. It has become necessary to induce those who have resigned to return to teaching, and service. Restoration of classification, retirement and other rights, lost by reason of such resignations, will assist in securing the return of many competent teachers to teaching service, and thus help to relieve such teacher shortage."

[20] Statutes 1947, chapter 271, provided: "*The people of the State of California do enact as follows:*

"Section 1. Section 13502 of the Education is hereby amended to read as follows:

"13502. Whenever any certificated employee of any school district who, at the time of his resignation, was classified as permanent, is, or has been, reemployed within three years after his last day of service the governing board of the district shall disregard the break in service of said employee and classify him as, and restore to him all of the rights of, a permanent employee; provided, that if said employee at the time of resignation was a member of any state or district retirement system, he shall be reinstated as a member of said system or systems with all rights previously held, including any credit for prior service; provided, further, that the period of the absence from service shall not be counted as time served for any purpose. In the case of a district retirement system, said employee shall contribute to such retirement system at the same rate he contributed prior to the time his membership terminated. If said employee withdrew his accumulated contributions, he shall redeposit them after reinstatement to membership either in a lump sum payment within a time limit to be specified by the governing board, or, in installments to be completed prior to the five years next following such reinstatement to membership or the date of retirement, whichever is the earlier.

"Sec. 2. This act is hereby declared to be an urgency measure, necessary for the immediate preservation of the public peace, health and safety, within the meaning of Section 1 of Article IV of the Constitution and shall therefore go into immediate effect. A statement of the facts constituting such necessity is as follows:

"Because of the serious shortage of teachers and other employees of school boards, Section 13502 of the Education Code was added to assist in receiving the competent personnel required, by reinstating the retirement credits of such personnel returning to service within three years after having been last in service. However, the aforesaid section does not permit the regaining of retirement credits in full, as will be provided by the amendment. The amendment will increase the effectiveness of the section as originally enacted."

[21] Statutes 1947, chapter 1356, provided: "*The people of the State of California do enact as follows:*

"Section 1. Section 13502 of the Education Code is hereby amended to read as follows:

Effective October 1, 1949, Statutes 1949, chapter 1198, section 1, page 2117, was enacted, which repealed section 13502 as amended by Statutes 1947, chapter 271, since its provisions were enacted elsewhere in the Education Code. Chapter 1198 also added language to section 13502, not pertinent to this appeal, regarding military service.

"13502. Whenever any certificated employee of any school district who, at the time of his resignation, was classified as permanent, is reemployed within 39 months after his last day of paid service, the governing board of the district shall classify him as, and restore to him all of the rights, benefits and burdens of, a permanent employee, except as otherwise provided in this code.

"Sec. 2. Section 14728.1 is added to the Education Code, to read:

"14728.1. Excepting as provided in Section 14744 of this code, upon the termination of a member's employment, his accumulated contributions shall be paid to him at his request; provided, that if in the opinion of the district retirement board his employment is permanently terminated, such repayment may be made without request by the member.

"Sec. 3. Section 14728.3 is added to the Education Code, to read:

"14728.3. If a person whose accumulated contributions have been returned to him thereafter reenters the system, he shall redeposit said contributions, with interest from the date of return of the contributions by the district to the date of redeposit, at such rates and within such period as the rules of the governing board may provide, but such period shall be not less than five years.

"Sec. 4. Section 14728 is added to the Education Code, to read:

"14728.4. If not more than 39 months have elapsed between the return of contributions by the district and the reentry to membership, his rate of contribution thereafter shall be the same as before his termination of service, but if more than 39 months have elapsed his rate of contribution thereafter shall be the rate applicable to persons of his age on the date of reentry.

"Sec. 5. Section 14728.5 is added to the Education Code, to read:

"14728.5. Except as otherwise provided in this code, all accumulated rights under the district retirement plan as of the date of termination of service, including matching of contributions by the district and credit for prior service, if any, shall be restored to any member who redeposits his accumulated contributions as provided in Section 14728.3.

"Sec. 6. Section 14728.6 is added to the Education Code, to read:

"14728.6. The provisions of Sections 14728.1 to 14728.5 inclusive shall be applicable to any member who returns, or has returned, to service after December 7, 1941. The governing board shall provide by rule for the adjustments required by this section.

"Sec. 7. Section 14135.1 of the Education Code is hereby amended to read as follows:

"14135.1. Whenever any noncertificated employee of any school district who, at the time of his resignation, was classified as permanent, is reemployed within 39 months after his last day of paid service, the governing board of the district shall disregard the break in service of said employee and classify him as, and restore to him all of the rights, benefits and burdens of, a permanent employee.

"Sec. 8. This act is hereby declared to be an urgency measure, necessary for the immediate preservation of the public peace, health and safety, within the meaning of Section 1 of Article IV of the Constitution and shall therefore go into immediate effect. A statement of the facts constituting such necessity is as follows:

"Because of the serious shortage of teachers and other employees of school boards, Sections 13502 and 14135.1 of the Education Code were added to assist in obtaining the competent personnel required, by reinstating the retirement credits of such personnel returning to the service within three years after having been last in service. However, the aforesaid sections do not permit the regaining of retirement credits in full, as will be provided by the amendment. The amendment will increase the effectiveness of the section as originally enacted."

In 1959, the entire Education Code was repealed and reenacted. Section 13502 was renumbered and appeared as section 13402 in substantially the same form. The language of section 13502 which directed the governing board of a school district to disregard a permanent, certificated employee's "break in service" when restoring all the rights, benefits and burdens of a permanent employee was deleted.[22]

In 1963, the previously deleted language of former section 13502 requiring the governing board of a school district to "disregard[] the break in service" when restoring all of the rights, benefits and burdens to a permanent, certificated employee who is reemployed within 39 months was reinserted to section 13402.[23]

Finally, Statutes 1976, chapter 1010, repealed the entire Education Code as it then existed and enacted a new Education Code, operative on April 1, 1977. The exact content of section 13402 appeared as section 44931.

As can be seen from the history of section 44931, the original enactment (§ 13502) has not been substantially changed. Essentially, the original 36-month period was lengthened to 39 months; a reemployed permanent, certificated employee was entitled to be restored to the "rights, benefits and burdens" of a permanent employee rather than merely having his "rights" restored; and the language affecting the restoration of the employee's membership in a retirement system was moved to other sections of the Education Code.

---

[22] Statutes 1959, chapter 2, provided, in pertinent part: "13402. Whenever any certificated employee of any school district who, at the time of his resignation, was classified as permanent, is re-employed within 39 months after his last day of paid service, the governing board of the district shall classify him as, and restore to him all of the rights, benefits and burdens of, a permanent employee, except as otherwise provided in this code; provided, that time spent in the active military service, as defined in Section 13552, subsequent to the last day of paid service shall not count as part of the aforesaid 39-month period; and provided further, that any such employee who has engaged in active military service subsequent to his last paid service and who resigned more than 39 months prior to October 1, 1949, shall be deemed to have complied with all requirements of this section if he is or has been re-employed before July 1, 1950."

[23] Statutes 1963, chapter 573, section 1, page 1452, provided: "*The people of the State of California do enact as follows:*

"Section 1. Section 13402 of the Education Code is amended to read:

"13402. Whenever any certificated employee of any school district who, at the time of his resignation, was classified as permanent, is re-employed within 39 months after his last day of paid service, the governing board of the district shall, disregarding the break in service, classify him as, and restore to him all of the rights, benefits and burdens of, a permanent employee, except as otherwise provided in this code; provided, that time spent in active military service, as defined in Section 13552, subsequent to the last day of paid service shall not count as part of the aforesaid 39-month period; and provided further, that any such employee who has engaged in active military service subsequent to his last paid service and who resigned more than 39 months prior to October 1, 1949, shall be deemed to have complied with all requirements of this section if he is or has been re-employed before July 1, 1950."

Directing this court's attention primarily to the language of Statutes 1947, chapter 271, section 2 (quoted in fn. 20, *ante*), which described the nature of the urgency of that amendment to section 13502 in terms of retirement benefits, appellants contend that the focus of the legislation has always been on the restoration of retirement benefits and not salary classification. Unlike appellants, we do not attribute the same restrictive intent to this language.

In the urgency provision of the original enactment of section 13502, the Legislature stated that the "[r]estoration of classification, retirement and other rights, . . . will assist in securing the return of many competent teachers to teaching service . . . ." The Legislature's specific reference to "retirement" and separate references to "classification" and "other rights" indicates not only that section 13502 was originally intended to apply to more than just retirement benefits, but also that restoration of classification is a right which is protected by section 13502.[24] Thus, the simple answer to appellants' contention is that the Legislature focused on retirement benefits in the May 16, 1947, amendment because the purpose of that amendment was to add language that if, at the time of resignation, a reemployed permanent, certificated employee was a member of a retirement system, he would be reinstated to that system "with all rights previously held, including any credit for prior service."

■ Our conclusion regarding the limited nature of the May 16, 1947, amendment is bolstered by the cardinal rule of statutory interpretation that, " ' "[i]f possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation]; "a construction making some words surplusage is to be avoided." [Citation.]' " (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

■ If this court were to read section 44931 to apply solely to retirement benefits as suggested by appellants, we would render the statute superfluous. As explained above, section 13502 was first amended in 1947 by adding the provisions relating to restoration of retirement benefits. Another amendment in 1947 segregated the portion of section 13502 as originally enacted from the subsequently-amended portion relating to retirement benefits. If the originally enacted portion of section 13502 was meant only to apply to retirement benefits, it would have been unnecessary in light of the newly enacted Education Code sections which specifically discussed this

---

[24] We recognize that salary schedules for teachers were not mandated until 1963 (former & 13502.5), a date following the enactment of section 13502, but, contrary to appellants' argument, this does not mean that the Legislature could not have intended that reemployed teachers be restored to their former salaries, regardless of the nonexistence of a schedule.

subject. Yet, instead of repealing the original language of section 13502, the Legislature retained the language when that section was amended in 1947, 1959, 1963, and 1976.

We therefore conclude that the Legislature intended section 13502, and therefore section 44931, to apply to the full range of rights, benefits and burdens of a permanent, certificated employee (not otherwise prohibited by the Education Code), including classification on the salary schedule.[25]

■ ■ ■ ■ ■ Accordingly, we hold that the trial court properly granted the petition for writ of mandate.[26]

## DISPOSITION

The judgment is affirmed.

Hanson, Acting P. J., and Ortega, J., concurred.

---

[25] This interpretation of section 44931 is consistent with the interpretation rendered in 43 Ops.Cal.Atty.Gen. 107 (1964). There, the Attorney General opined that, under section 13402, a permanent, certificated employee who was reemployed within 39 months was entitled to restoration of the unused sick leave she accumulated prior to her resignation.

[26] In their reply brief, appellants for the first time argue that the practice of limiting credit for previous teaching experience to five years was specifically approved by the Supreme Court in *Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist., supra,* 21 Cal.3d at page 661, footnote 6.

Initially, we note that it is improper to raise new substantive arguments for the first time in a reply brief and an appellate court has no obligation to address the merits of such arguments. (*Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623, 641 [178 Cal.Rptr. 167]; *Sunseri* v. *Camperos Del Valle Stables, Inc.* (1986) 185 Cal.App.3d 559, 562, fn. 4 [230 Cal.Rptr. 23]; *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 320 [231 Cal.Rptr. 820]; *In re Marriage of Nolte* (1987) 191 Cal.App.3d 966, 975 [236 Cal.Rptr. 706].)

We will nonetheless address appellants' argument. While appellants correctly state the holding of the *Palos Verdes* case, they incorrectly contend that the holding bears on the case at bench. In the footnote cited by appellants, the *Palos Verdes* court held that the uniformity mandated by the statutory predecessor of section 45028 did not prohibit a school district from limiting the amount of credit given a newly employed teacher for prior teaching experience as long as all such employees were treated uniformly. However, this footnote does not help appellants because (1) petitioners were granted relief pursuant to the rights conferred by section 44931, not section 45028; and (2) while salary regulation B limits the credit given newly-hired teachers for prior teaching experience performed outside of District, a regulation that is arguably violative of section 45028 since it treats employees differently depending on where they previously taught, salary regulation B has no application to Dixon since her prior teaching experience was performed within District and petitioners have not challenged its validity.